DECISION.
{¶ 1} Petitioner-appellant Ramone Anderson appeals from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. He presents on appeal a single assignment of error, in which he challenges the court's dismissal of his petition without an evidentiary hearing. Upon our determination that Anderson was entitled to a hearing, we reverse the judgment of the court below.
 I. {¶ 2} In February of 2001, Anderson was arrested and charged with two counts of felonious assault and a single count of having a weapon under a disability, in connection with the February 1 shooting of Shawn Howard. Counsel was appointed to represent Anderson, and the defense filed, prior to trial, a notice of its intention to present an alibi defense. The state, in its response to the defense's discovery demand, listed as prospective witnesses the victim, Shawn Howard, and Howard's two companions on the evening that he was shot, Farakan Shabazz and Marcus Sneed. The state subpoenaed Shabazz and Sneed to appear as witnesses at Anderson's trial, but failed to effect personal service upon them or to otherwise secure their appearance.
 {¶ 3} Anderson waived a jury trial on the charge of having a weapon under a disability, and in August 2001, he proceeded to a trial before a jury on the two felonious assault charges. The state presented at trial the testimony of Shawn Howard and of the police officer who had investigated the shooting.
 {¶ 4} Howard testified that on February 1, 2001, at approximately 6:00 p.m., he and Shabazz were riding in a car driven by Sneed through the Mt. Auburn area of the city of Cincinnati. Sneed stopped and left the car to speak to a man standing near the street. Howard also got out of the car and joined a group of six or seven men who stood on the opposite side of the street. As Howard turned away from the group and walked back toward the car, he saw Sneed approaching from across the street. Howard then heard someone from the group behind him ask Sneed what he wanted. Sneed replied, "Everything," prompting a man clad in a hooded sweatshirt and armed with a handgun to walk toward them and begin firing. Howard hid behind a tree, and Sneed ran toward the car. The man continued to fire in the direction of the car. When the firing stopped, Howard emerged from behind the tree and saw a man hand the hooded man what he thought was a new clip for the gun, but later learned from others was a second handgun. Howard turned and fled as the hooded man resumed firing, but was downed by gunshot wounds to both legs. Sneed helped him into the car and drove him to the hospital.
 {¶ 5} Shortly thereafter, a police officer assigned to the Mt. Auburn area arrived at the scene of the shooting, where he learned that the victim had already been transported to the hospital. The officer later caused the crime scene to be processed, but it yielded no evidence useful in identifying Howard's assailant.
 {¶ 6} Howard rebuffed the officer's attempts to interview him at the hospital, but he agreed to speak to the officer following his release from the hospital five days later. Howard told the officer that he had seen the shooter before, and he selected Anderson's picture from a group of photographs that the officer had gathered, which depicted individuals known to frequent the Mt. Auburn area.
 {¶ 7} When the officer interrogated Anderson about the shooting, Anderson stated that, on the evening in question, he and a female friend had gone to a 5:30 p.m. movie and then to her house until after midnight. Following his interrogation, Anderson asked the officer for permission to telephone his mother. After a brief conversation with her son, Anderson's mother asked to speak with the officer, and she repeated to him her recollection that her son had been with her on the evening of the shooting. Anderson's mother appeared as the defense's sole witness and testified to that effect at trial.
 {¶ 8} Based upon all the foregoing testimony, the jury returned verdicts finding Anderson guilty of felonious assault in violation of R.C. 2903.11(A)(2), as charged in count one of the indictment, but not guilty of felonious assault in violation of R.C. 2903.11(A)(1), as charged in count two. In a separate proceeding, the trial court found Anderson guilty of having a weapon under a disability. The court then sentenced him as appears of record and entered judgment accordingly. On appeal, we affirmed the judgment of conviction. See State v. Anderson
(Dec. 24, 2002), 1st Dist. No. C-010731.
 {¶ 9} In his postconviction petition, which is the subject of the instant appeal, Anderson contended that he was denied the effective assistance of trial counsel, when counsel failed to interview or to secure the exculpatory testimony of Marcus Sneed. In support of his petition, Anderson offered Sneed's affidavit. Sneed averred in his affidavit that he had witnessed Howard's shooting, and that Anderson was not Howard's assailant and "was not present at the scene." Sneed stated that, at the hospital, the police had "approached" him, but had not shown him photographs to aid him in identifying Howard's shooter. He stated that he did not know Anderson at the time of the shooting, but that he had introduced himself to Anderson in Noble Correctional Institution, where both men were incarcerated, after he had learned that Anderson had been convicted of Howard's shooting, "because [he] knew [Anderson] was not the assailant and realized they [had] convicted the wrong man." Sneed asserted that no one had contacted or interviewed him concerning the shooting, and that, had he been called to testify at trial, he would have exonerated Anderson.
 {¶ 10} Anderson also supported his petition with the affidavit of an attorney whose practice consisted chiefly of criminal defense work and who, at the request of the state public defender's office, had reviewed trial counsel's case file. The attorney's review of the file disclosed that, within the month following Anderson's indictment, (1) trial counsel had been provided with Sneed's name, (2) the Hamilton County Public Defender's office had been provided with a request for an investigation that included Sneed's name, and (3) the state had provided trial counsel with discovery that included Sneed's name and address. But with respect to Sneed, the file showed "no further investigation, interview or attempt to do so" on the part of, or at the direction of, Anderson's trial counsel.
 {¶ 11} The common pleas court denied Anderson's petition upon its conclusion that Anderson had failed to sustain his burden of proving that trial counsel's failure to secure Sneed's appearance at trial constituted ineffective assistance of counsel. The court found that the absence of an affidavit from trial counsel left the court free to "speculate" that Anderson's trial counsel had, in fact, interviewed Sneed and had made a "tactic[al]" decision not to call him as a witness for the defense. The court further found that trial counsel's failure to present Sneed's testimony had not prejudiced Anderson, because Sneed's testimony would merely have been cumulative of the alibi testimony given by Anderson's mother and would not have provided a reasonable probability of a different verdict.
 II. {¶ 12} In the sole assignment of error advanced in his appeal, Anderson contends that the common pleas court erred in denying his postconviction petition without an evidentiary hearing. We agree.
 {¶ 13} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C. 2953.21(A)(1). In advancing such a claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." See R.C. 2953.21(C).
 {¶ 14} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.;State v. Pankey (1981), 68 Ohio St.2d 58, 428 N.E.2d 413;State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C.2953.21(E).
 {¶ 15} In his petition, Anderson sought relief on the ground that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance of defense counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. See Strickland v. Washington (1984),466 U.S. 668, 694, 104 S.Ct. 2052. To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." Statev. Powell (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (citingLockhart v. Fretwell [1993], 506 U.S. 364, 113 S.Ct. 838, andStrickland, supra).
 {¶ 16} Shaun Howard's testimony at trial and his statement to the police, as related by the investigating officer at trial, placed Anderson at the scene and implicated him as the shooter. Anderson's defense to the allegation, as reflected in his notice of alibi, in his statement to the investigating officer, and in his mother's trial testimony, was that he was not present when Howard was shot. Sneed in his affidavit provided an eyewitness account that, had it been presented at trial, would have controverted the state's version of events and would have bolstered Anderson's defense. And the affidavit of the criminal defense attorney provided proof that Anderson's trial counsel could have secured Sneed's exculpatory testimony, but, through a lack of diligence or competence, failed to do so.
 A. {¶ 17} The common pleas court denied Anderson's petition, in part, upon its conclusion that Sneed's proposed testimony would not have provided a reasonable probability of a different verdict. Implicit in this conclusion was the court's determination that Sneed's affidavit testimony was simply not credible.
 {¶ 18} When, as here, outside evidence submitted in support of a postconviction claim consists of affidavits, the common pleas court must accord the affidavits "due deference," but the court need not "accept the affidavits as true statements of fact." Instead, the court "may, in the sound exercise of discretion, judge their credibility" and "may, under appropriate circumstances * * *, deem affidavit testimony to lack credibility without first observing or examining the affiant." State v.Calhoun (1999), 86 Ohio St.3d 279, 284, 1999-Ohio-102,714 N.E.2d 905. When assessing the credibility of an affidavit, the court must consider all relevant factors, including "(1) whether the judge reviewing the postconviction relief petition also presided at the trial, * * * (3) whether the affidavit
contain[s] or rel[ies] on hearsay, (4) whether the affiant [is a] relative of the petitioner, or otherwise interested in the success of the petitioner's efforts, * * * (5) whether the affidavit contradict[s] evidence proffered by the defense at trial," * * * and (7) whether the affidavit is "internally inconsistent." Id. at 284-285, 714 N.E.2d 905.
 {¶ 19} The judge who reviewed Anderson's petition had also presided over his trial. But Sneed's affidavit was internally consistent and conveyed firsthand information. The affidavit did not contradict, but instead supported, the evidence adduced at trial by the defense. Nothing in the record contradicted Sneed's statement in his affidavit that he had had no prior relationship with Anderson. Nor did the record disclose any other interest that Sneed might have had in the success of Anderson's effort to obtain a new trial. Thus, the common pleas court, to the extent that it might be said to have discounted the credibility of Sneed's affidavit testimony, abused its discretion.
 B. {¶ 20} The court also based its denial of Anderson's petition upon its determination that Sneed's proposed testimony would merely have been "cumulative" of the alibi testimony given by Anderson's mother. We disagree.
 {¶ 21} Anderson's mother testified as to where Anderson was when Howard was shot; Sneed provided eyewitness testimony as to where Anderson was not at the time of the shooting. Thus, Sneed's testimony, although probative of Anderson's alibi defense, was complementary to, not cumulative of, the testimony of Anderson's mother.
 C. {¶ 22} Finally, the court predicated its denial of Anderson's petition upon its presumption that, in the absence of an affidavit from trial counsel explaining the lapse in his investigative and advocacy efforts, the court was free to "speculate" that counsel had, in fact, interviewed Sneed and then had made a "tactic[al]" decision not to present him as a witness. The court was mistaken in its presumption.
 {¶ 23} The affidavit of the criminal defense attorney submitted by Anderson in support of his petition suggested that Anderson's trial counsel had Sneed's exculpatory testimony within his purview, but that counsel had failed, through a lapse in diligence or competence, to discover the testimony and to present it at trial. The record of the proceedings below served to reinforce, rather than to counter, this suggestion. Nevertheless, the common pleas court deemed Anderson's failure to provide an affidavit from trial counsel admitting his negligence or incompetence to be fatal to the postconviction claim.
 {¶ 24} In State v. McIntosh, 1st Dist. No. C-020593, 2003-Ohio-2834, at ¶ 21, we confronted a similar deficiency in the proof offered in support of a postconviction petition. We noted in McIntosh that such a deficiency might fairly be explained by the fact that, in the initial stages of a postconviction proceeding, a petitioner cannot avail himself of the civil rules governing discovery to compel the testimony of a witness. We further noted that such a problem of proof requires a court to make some accommodation to afford the petitioner an opportunity to satisfy his burden of proof. We conclude here, as we did in McIntosh, that the problem of proof presented by Anderson's postconviction claim demands a thorough examination of the claim in an evidentiary hearing.
 III. {¶ 25} Anderson's petition, with its supporting affidavits, and the files and the record of the case showed a deficiency in defense counsel's performance at trial such that the trial could not be said to have reliably produced a just result. Thus, Anderson established an entitlement to a hearing on his claim of ineffective assistance of counsel. See R.C. 2953.21(E). We, therefore, hold that the common pleas court erred when it dismissed Anderson's petition without a hearing. Accordingly, we sustain the sole assignment of error, reverse the judgment entered below, and remand this matter for further proceedings consistent with the law and this Decision.
Judgment reversed and cause remanded.
Sundermann, P.J., Doan and Gorman, JJ.