DECISION.
{¶ 1} Petitioner-appellant Martin L. Holloman appeals from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. He presents on appeal a single assignment of error, in which he challenges the court's dismissal of his petition without an evidentiary hearing. Upon our determination that Holloman was entitled to a hearing, we reverse the judgment of the court below.
 I {¶ 2} In July of 2002, Holloman was arrested and indicted for theft in violation of R.C. 2913.02. On August 23, he withdrew his initial plea of not guilty and entered a plea of guilty to the charge. The trial court accepted Holloman's plea and found him guilty as charged, but the court delayed the imposition of sentence pending a "River City [e]valuation." On September 6, the court sentenced Holloman to a term of incarceration of seven months.
 {¶ 3} Holloman did not perfect a direct appeal from the judgment of conviction. He instead filed with the common pleas court a petition pursuant to R.C. 2953.21 to vacate or set aside his conviction. In his postconviction petition, Holloman contended that he had been denied his constitutionally secured privilege against self-incrimination and rights to due process and the effective assistance of counsel, when his trial counsel and/or the trial court "coerced or induced" his guilty plea by the "false promise" that, in exchange for his plea, the court would sentence him to "four to six months in the River City Correctional Center in Cincinnati, Ohio."
 {¶ 4} In support of his petition, Holloman offered his own affidavit and copies of correspondence from his trial counsel, who had been appointed by the office of the Hamilton County Public Defender, and from an attorney from the office of the Ohio Public Defender. In his affidavit, Holloman averred that, during the first pretrial conference, his appointed counsel had met with the trial court in chambers and had "negotiated a verbal plea bargain," under which Holloman, "in exchange for [his] guilty plea to the indicted charge of felony theft, * * * could expect to receive four to six months in the River City Corrections Center in Hamilton County, Ohio." Holloman then met with counsel to discuss the proposed plea agreement. Counsel explained that "the four to six months at River City would depend on how [Holloman] fared at the program, * * * that * * * Holloman would receive aftercare, including random drug testing, and that [the court] wanted * * * Holloman in a locked facility." With this understanding, Holloman agreed to proceed to a plea hearing.
 {¶ 5} Holloman averred that, at the plea hearing, prior to entering his guilty plea, he had asked for and had received his counsel's assurance that he need not "say on the trial court's records that he had been promised the River City Corrections Center program in exchange [for] his guilty plea." For this reason, Holloman asserted, he said, "No," when, during the Crim.R. 11 colloquy, the trial court asked him whether "he had been promised anything * * * to make him change his plea from not guilty to guilty."
 {¶ 6} At the sentencing hearing, the court reviewed the presentence-investigation report, which, according to Holloman, "stated that [he] was [an] acceptable candidate for the River City Corrections Center program." Despite this favorable evaluation, the court sentenced Holloman to a seven-month term of incarceration. In doing so, Holloman contends, the court "breached the negotiated verbal plea bargain between [the court] and [his trial counsel] * * *."
 {¶ 7} Two days after sentencing, Holloman wrote his trial counsel to request an affidavit concerning the plea agreement that counsel had negotiated with the trial court. Three weeks later, Holloman received a letter from counsel that offered the following response: "I have been advised by my supervising attorney not to swear out an [a]ffidavit at this time. He does not wish for one of his associates to swear out such an [a]ffidavit without being asked or subpoenaed to do so by the Ohio State Public Defender's Office. Therefore, please have your mother give me a call so I can contact the [state public defender] that you spoke with. I would like to tell the [state public defender] how things occurred and advise him (or her) that I will fully cooperate with any requests to succeed on a Motion to Discard [sic] the Plea."
 {¶ 8} A week later, counsel responded in writing to Holloman's second request for assistance in challenging his guilty plea. In her second letter, counsel "reiterate[d] what [the trial court had] said to [her] while [they] were in chambers discussing a plea bargain in [Holloman's] case." Counsel's "reiterat[ion]" echoed Holloman's recollection in all of its particulars, including the court's statement "that in exchange for [his] plea [Holloman] could expect to receive four to six months in River City." Counsel further stated, "As far as my responsibility to immediately withdraw your plea, I will admit I may have made a mistake in that area. When [the court] sentenced you, I looked toward you and you kept your eyes on the [j]udge. I held my eyes on you so you could indicate to me what you wanted me to do. I suppose I could have withdrawn [the plea] anyway, without your go-ahead, but I felt uncomfortable doing so. That is why, after you and I spoke, I went back to the [j]udge's chambers to ask him why he did what he did. I have talked to other attorneys and even talked to the [j]udge and have been told that that was a judgment call. Clearly, you do not agree with what I decided to do and I apologize for that."
 {¶ 9} A month later, Holloman wrote to the office of the state public defender to request assistance in filing either a motion to withdraw his guilty plea or a petition for postconviction relief, on the ground that the trial court had breached the plea agreement. An assistant state public defender met with Holloman and responded a month later with a letter declining the representation, because the "office [could not] establish for certain whether there [was] merit [to Holloman's] case." In his letter, the assistant public defender stated that he had "managed to verify" that Holloman had been accepted into the River City program, but he could not "verify the existence of the plea bargain." He pointed out that Holloman's plea entry made no mention of the River City program and contained Holloman's "acknowledge[ment] that the potential sentence [was] 6 to 12 months." He asserted that, although he found trial counsel's letters to Holloman "telling," in the absence of "an affidavit from [trial counsel] disprov[ing] the content[s] of the plea [entry]," he could discern "no court document [that] support[ed] the existence of a plea bargain." The authority to compel such an affidavit, he opined, was available only if a hearing were granted, and, in his judgment, "the letters alone would not * * * get [them] an evidentiary hearing * * *."
 II {¶ 10} In the sole assignment of error advanced in his appeal, Holloman contends that the common pleas court erred in denying his postconviction petition without an evidentiary hearing. We agree.
 {¶ 11} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C. 2953.21(A)(1). In advancing his claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." See R.C. 2953.21(C).
 {¶ 12} A postconviction claim is subject to dismissal without a hearing if the petitioner has failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See id.;State v. Pankey (1981), 68 Ohio St.2d 58, 428 N.E.2d 413;State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819. Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C.2953.21(E).
 {¶ 13} We note at the outset that Holloman, in his postconviction petition, sought relief on the ground that his trial counsel and/or the trial court had "coerced or induced" his guilty plea by the "false promise" of the River City program. The Ohio Supreme Court has "strongly discourage[d]" the participation of a trial judge in plea negotiations, because "[s]uch participation, * * * due to the judge's position in the criminal justice system[,] presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." State v. Byrd (1980), 63 Ohio St.2d 288,293, 407 N.E.2d 1384. But Holloman, in arguing in support of his postconviction claim, did not challenge the "coerc[ive]" nature of the trial court's participation in the plea-bargaining process; he instead directed his arguments against the voluntary nature of his guilty plea when it was "induced" by the court's (and his counsel's) promise that he would be sentenced to River City.
 {¶ 14} Federal and state due-process considerations require that a guilty plea "represent a voluntary and intelligent choice among the alternative courses of action open to a defendant." North Carolina v. Alford (1970), 400 U.S. 25, 31,91 S.Ct. 160; accord State v. Engle (1996), 74 Ohio St.3d 525,527, 660 N.E.2d 450. A defendant may withdraw his guilty plea upon proof that the plea was involuntary or was the involuntary product of his trial counsel's ineffectiveness. See Hill v.Lockhart (1985), 474 U.S. 52, 56, 59, 106 S.Ct. 366; accordState v. Xie (1992), 62 Ohio St.3d 521, 524, 584 N.E.2d 715;State v. Blackwell (May 1, 1998), 1st Dist. No. C-970150. To prevail on a claim that his guilty plea was the involuntary product of his counsel's ineffectiveness, a postconviction petitioner must demonstrate "first, * * * that counsel's performance was deficient," see Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, and, second, "that there [was] a reasonable probability that, but for counsel's [deficient performance, the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill, supra at 59, 106 S.Ct. 366; see Xie, supra at 524, 584 N.E.2d 715.
 {¶ 15} The common pleas court denied Holloman's petition upon its conclusion that Holloman had failed to sustain his burden of demonstrating substantive grounds for relief, when he failed to prove, through the petition and his supporting affidavit, the existence of the alleged plea bargain. We disagree.
 {¶ 16} Holloman's affidavit, supported by the correspondence from his trial counsel, provided proof that, at the first pretrial hearing, trial counsel and the trial court had negotiated an agreement, pursuant to which Holloman had agreed to enter a guilty plea to the charge of theft, with the "expect[ation]" that the court would sentence him to four to six months in River City. Holloman's plea entry provided proof to the contrary, to the extent that the entry made no mention of the River City program. Moreover, Holloman admitted that, during his Crim.R. 11 colloquy with the trial court, he had denied that he had "been promised anything" in exchange for changing his plea. And he and his counsel conceded that they had said nothing about the plea agreement at the sentencing hearing when the court had instead imposed a jail sentence. But Holloman explained in his affidavit that he had said nothing about the agreement because counsel had assured him that he need not mention "on the trial court's records" the "promise" of River City. And counsel, in her letter, took full responsibility for the defense's failure to object when the court instead imposed a term of incarceration.
 {¶ 17} We note that the common pleas court, in ruling upon Holloman's postconviction petition, did not have before it a transcript of the proceedings at the plea and sentencing hearings. This deficiency was attributable to Holloman's failure to take a direct appeal from his judgment of conviction and his subsequent failure to submit a copy of the transcript with his petition. But we do not find the absence of the transcript to be fatal to Holloman's claim. The events material to Holloman's claim occurred off the record. Holloman essentially conceded the regularity of the proceedings at the plea and sentencing hearings when he admitted in his affidavit, and his trial counsel confirmed in her letters, that the defense had, during both hearings, stood mute with regard to the alleged plea agreement.
 {¶ 18} Nor do we find, as the state argues, that Holloman's challenge to his trial counsel's effectiveness fails in the absence of an affidavit from counsel. Holloman did not provide an affidavit from counsel because trial counsel's supervisor had forbidden her from supplying an affidavit "without being asked or subpoenaed to do so by the Ohio State Public Defender's Office," and because this court has consistently read the postconviction statutes to preclude a postconviction petitioner, in the initial stages of a postconviction proceeding, from availing himself of the civil rules governing discovery to compel the testimony of a witness. See State v. Byrd (2001), 145 Ohio App.3d 318,332-333, 762 N.E.2d 1043. The assistant state public defender further compounded Holloman's dilemma when, in his letter declining Holloman's request for representation, he opined that trial counsel's "letters alone would not * * * get [them] an evidentiary hearing"; that, without an affidavit from trial counsel, Holloman had no proof of the existence of the alleged plea agreement; and that he could obtain such an affidavit only if the common pleas court granted a hearing. We have held that the problems of proof posed by the limit placed on discovery in the initial stages of a postconviction proceeding may require a court to make some accommodation to afford the petitioner an opportunity to satisfy his burden of proof. See State v.McIntosh, 1st Dist. No. C-020593, 2003-Ohio-3824. We conclude here, as we did in our decision in McIntosh, that the problem of proof presented by Holloman's claim demands a thorough examination of the claim in an evidentiary hearing. Accord Statev. Anderson, 1st Dist. No. C-030382, 2004-Ohio-866.
 III {¶ 19} We thus conclude that Holloman established an entitlement to a hearing on his postconviction claim, when he submitted with his petition evidentiary material setting forth sufficient operative facts to demonstrate that his guilty plea had not been voluntarily entered and was the product of his trial counsel's ineffectiveness. See R.C. 2953.21(E). We, therefore, hold that the common pleas court erred when it denied his petition without an evidentiary hearing. Accordingly, we sustain the sole assignment of error, reverse the judgment entered below, and remand this matter for further proceedings consistent with the law and this decision.
Judgment reversed and cause remanded.
Hildebrandt, P.J., Gorman and Painter, JJ., Concur.