DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Lawrence Armbruster, appeals the judgment of the Lorain County Court of Common Pleas, which granted summary judgment in favor of appellee, Ford Motor Co., on appellant's complaint. Appellant further appeals the jury verdict in favor of appellee, James Hampton. This Court affirms, in part, and reverses, in part.
 I. {¶ 2} On August 14, 2003, appellant filed a complaint, which he amended on December 16, 2003. In his complaint, appellant alleged that appellee James Hampton ("Hampton") intentionally inflicted physical injury (battery) and emotional distress upon him as a result of an incident on the appellee Ford Motor Company's ("Ford") premises on December 17, 2002. Appellant further alleged that appellee Ford was liable to appellant under the theories of respondeat superior and its negligent hiring/retention of Hampton.[1]
 {¶ 3} On September 27, 2004, Ford filed a motion for summary judgment. Appellant responded in opposition on October 29, 2004. On November 4, 2004, the trial court issued a judgment entry in which it granted Ford's motion for summary judgment, thereby dismissing all claims against Ford. The trial court did not enter final judgment in favor of Ford upon the court's express determination that there is no just reason for delay; accordingly, the November 4, 2004 judgment entry was not a final, appealable order from which appellant could take an immediate appeal. See Civ.R. 54(B).
 {¶ 4} On November 8, 2004, the trial court issued an order scheduling the remaining pending claims against Hampton for jury trial on April 6, 2005. The trial court scheduled the matter for video jury trial, ordering the following:
"All trial testimony will be presented by videotape pursuant to Sup.R. 13, Local Rule 23 and Civil Rule 40. All videotape testimony to be filed with the Clerk of Courts by February 28,2005. All of the videotape trial testimony objections are to be reduced to transcripts and are to be filed with the Clerk of Courts by March 14, 2005." (Emphasis in original.)
No party objected to this matter proceeding as a videotape trial to the jury. Significantly, on November 22, 2004, December 6, 2004, January 12, 2005, February 25, 2005, and March 23, 2005, appellant filed various notices that he would be taking certain depositions. Each notice concluded with the sentence: "The purpose of the testimony is to perpetuate [the witness'] testimony [rebuttal testimony] for use at trial." Further, on February 14, 2005, appellant filed a notice of filing of the videotaped trial testimony of Dr. Byron Marsolais, appellee Hampton and Kim Nagyvathy, and on March 2, 2005, appellant filed a notice of filing the deposition of Dr. Stanley Gardner, all "for use at the Trial of the instant action[.]"
 {¶ 5} On February 8, 2005, appellant filed his first motion to clarify or amend the November 8, 2004 order scheduling the matter for video jury trial. Specifically, notwithstanding the order that "[a]ll trial testimony will be presented by videotape[,]" appellant asserted that the order failed to require that all witnesses be presented only by videotape. Appellant then requested that the order be amended to permit appellant to testify live to give the jury "a full and complete opportunity to judge [appellant's] credibility[.]" See Fantozzi v. SanduskyCement Prods. Co. (1992), 64 Ohio St.3d 601, 607. The trial court denied appellant's motion without analysis.
 {¶ 6} On March 24, 2005, appellant filed his second motion to amend the trial court's November 8, 2004 video jury trial order. Specifically, appellant requested that the order be amended to permit appellant to read the deposition of Dr. Stanley Gardner into evidence at trial in lieu of producing another trial video deposition. Appellant averred in an affidavit that he could not afford to pay to videotape Dr. Gardner's testimony. Appellant further argued that the trial court would still be able to rule on objections to the testimony prior to trial, so that the judge would not have to be present in the courtroom during the reading of Dr. Gardner's deposition testimony. The trial court granted appellant's second motion to amend the prior video jury trial order without analysis.
 {¶ 7} Appellee Hampton filed three motions in limine prior to trial. First, Hampton moved for an order excluding any testimony or other evidence regarding the discipline meted out to Hampton by Ford as a result of the interaction between Hampton and appellant on December 17, 2002. In support, Hampton argued that any relevance of such evidence would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and/or of misleading the jury. Appellant opposed the motion. The trial court granted Hampton's motion in limine and ordered the exclusion of any and all testimony or other evidence pertaining to Ford's discipline of Hampton as a result of the December 17, 2002 incident.
 {¶ 8} Second, Hampton filed a motion in limine, moving for an order excluding any testimony or other evidence pertaining to Hampton's 1970 felony conviction for breaking and entering into a house. Appellant opposed the motion, arguing that the evidence goes to Hampton's credibility, because Hampton failed to disclose the felony conviction on his application for hourly employment with Ford in 1973, three years after his conviction. The trial court granted Hampton's motion in limine and ordered that any and all evidence pertaining to Hampton's 35-year old felony conviction be excluded.
 {¶ 9} Third, Hampton filed a motion in limine, moving for an order excluding any testimony or other evidence pertaining to the purported written statement of Todd Griffith regarding his alleged observations of the December 17, 2002 incident between appellant and Hampton. In support, Hampton asserted that such statement was hearsay, and appellant had not videotaped Mr. Griffith's trial testimony for presentation to the jury. Hampton further argued that the statement was not admissible as a business record, because the method or circumstances of the statement's preparation indicate a lack of trustworthiness. Appellant opposed the motion, asserting that the statement is admissible as a present sense impression, excited utterance and/or as a record kept in the regular course of Ford's business. The trial court granted Hampton's motion in limine and ordered that no party shall refer to or describe the alleged statements of Todd Griffith during trial.
 {¶ 10} Appellant filed one motion in limine, requesting an order prohibiting Hampton's expert witness, Dr. Howard Tucker, from making any reference of any kind at any time during trial to appellant's psychological condition and/or the psychiatric evaluation of appellant by Dr. Byong Ahn. In support, appellant asserts that Dr. Howard is not qualified to testify in regard to psychological or psychiatric matters, that Dr. Howard merely expresses "feelings and considerations," rather than opinions supported by the requisite scientific certainty, and that Dr. Tucker would merely ratify Dr. Ahn's hearsay statements without any basis. Hampton opposed the motion, asserting that evidence regarding appellant's psychological/psychiatric conditions is relevant to the claim alleging intentional infliction of emotion al distress, that Dr. Ahn's records were kept in the course of regular business activity, and Dr. Tucker reviewed Dr. Ahn's records. The trial court denied appellant's motion in limine without analysis.
 {¶ 11} The matter proceeded to trial. At the conclusion of trial, the jury rendered its verdict in favor of appellee Hampton. On April 11, 2005, the trial court issued an entry, journalizing judgment in favor of Hampton and taxing costs of the action to appellant. The trial court stated that costs would include the expense of recording testimony on videotape and the expense of playing the videotape recording at trial. Hampton was ordered to submit an accounting of such costs to the court. On May 11, 2005, the trial court issued a journal entry, assessing costs to appellant in the sum of $2,731.48, to be paid directly to either Hampton or his counsel.
 {¶ 12} Appellant timely appeals, raising six assignments of error for review. This Court considers some assignments of error out of order to facilitate review.
 II. {¶ 13} As a preliminary matter, appellant asserts in his notice of appeal that he is appealing "from the final judgment entered in this action on the 11th day of April, 2005." Appellant attached only a copy of the April 11, 2005 journal entry to his notice of appeal. He assigns as error, however, certain other orders issued by the trial court, which orders are neither referenced in, nor attached to, the notice of appeal. Both appellees argue that appellant violated the mandates of App.R. 3(D), and that appellant's failure to comply with the rule divests this Court of jurisdiction to consider appellant's assignments of error on appeal. This Court disagrees.
 {¶ 14} App.R. 3(D) states, in relevant part:
"Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."
 {¶ 15} Appellee cites this Court's prior decision in Statev. Dixon, 9th Dist. No. 21463, 2004-Ohio-1593, at ¶ 7, for the proposition that this Court is without jurisdiction to review an order which the appellant has not designated in the notice of appeal. We here distinguish Dixon from the instant matter. InDixon, the appellant raised assignments of error in his appeal which related to an order which was subsequently decided by the trial court after the appellant had filed his notice of appeal. The appellant Dixon had pled guilty to certain offenses and was sentenced. Dixon then moved to withdraw his guilty plea. Dixon timely appealed his conviction and sentence, filing his notice of appeal three and a half weeks later, before the trial court had the opportunity to rule on his motion to withdraw his guilty plea. During the pendency of the appeal, the trial court denied Dixon's motion to withdraw his guilty plea, and Dixon assigned this as error in his pending appeal. This Court found that it did not have jurisdiction to consider Dixon's assignments of error pertaining to the trial court's denial of his motion to withdraw his guilty plea, because Dixon had failed to amend his appeal pursuant to App.R. 3(F) to add subsequently decided judgments for consideration on appeal. Dixon at ¶ 6. In support, this Court noted that the purpose of App.R. 3(D) is "to notify potential appellees of an appeal and advise them as to what orders the appellant is appealing from." Id. at ¶ 7. It is axiomatic that an appellee would not be advised that an appellant is appealing from an order issued in the trial court after the filing of the notice of appeal unless the appellant has taken steps to amend the notice of appeal pursuant to App.R. 3(F).
 {¶ 16} The Ohio Supreme Court has otherwise addressed this issue, refusing to interpret App.R. 3 so strictly as to divest an appellate court of jurisdiction where a timely notice of appeal is otherwise defective. Transamerica Ins. Co. v. Nolan (1995),72 Ohio St.3d 320. The Supreme Court held:
"Ohio App.R. 3(A) provides, `Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal.' App.R. 3(A) is controlling. Pursuant to App.R. 3(A), the only jurisdictional requirement for the filing of a valid appeal is the timely filing of a notice of appeal. When presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted, and its decision will not be overturned absent an abuse of discretion." Id. at 322.
In determining whether an appellate court abuses its discretion by dismissing an appeal on the basis of a timely, yet otherwise defective, notice of appeal, the high court considers whether the appellant's mistake was made in good faith, whether prejudice has accrued as a result, whether dismissal constitutes a disproportionate sanction, whether the client is punished for the fault of his counsel, and whether the dismissal frustrates the overriding objective of deciding cases on their merits. Id.
 {¶ 17} In this case, appellant failed to identify and attach the November 4, 2004 judgment entry granting summary judgment in favor of Ford; the November 8, 2004 video jury trial order; and the April 7, 2005 journal entry in which the trial court addressed the motions in limine. There is no dispute, however, that appellant's notice of appeal was timely filed. Therefore, appellate jurisdiction has attached and the imposition of any sanction premised upon the defects in the notice of appeal lies within the sound discretion of this Court.
 {¶ 18} Appellant captioned his notice as Lawrence A.Armbruster v. James Hampton, et al., and he certified service of the notice of appeal upon Ford's counsel, as well as counsel for Hampton. Under the circumstances, this Court cannot find that appellant's failure to identify and attach all orders from which he appeals was made in bad faith or that the appellees were prejudiced as a result. Given the overriding objective of deciding cases on their merits, this Court finds that dismissal of the appeal would constitute a disproportionate sanction. Accordingly, we address appellant's assignments of error on their merits.
 III. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING SUMMARY JUDGMENT TO APPELLEE FORD MOTOR COMPANY."
 {¶ 19} Appellant argues that the trial court erred by granting summary judgment in favor of appellee Ford, thereby dismissing all claims against Ford. This Court disagrees.
 {¶ 20} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 21} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 22} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 23} Appellant alleges Ford's liability under two theories, to wit: respondeat superior and negligent hiring, although appellant argues that Ford is actually liable for its negligent supervision or retention of Hampton, not its hiring of him. In addition, appellant argues that summary judgment in favor of Ford is improper because facts exists to support Ford's liability under a cause of action for premises liability, although it is questionable whether such a claim was properly alleged in the complaint.
 {¶ 24} To prevail on his claim of negligent supervision or retention, appellant must establish:
"(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Collins v. Flowers,
9th Dist. No. 04CA008594, 2005-Ohio-3797, at ¶ 32, quoting Rutav. Breckenridge-Remy Co. (Dec. 12, 1980), 6th Dist. No. E-80-39.
In addition, appellant must demonstrate that Hampton's act was reasonably foreseeable. Armaly v. Wapakoneta, 3d Dist. No. 2-05-45, 2006-Ohio-3629, at ¶ 54. "An act is reasonably foreseeable if the employer knew or should have known of the employee's `propensity to engage in similar criminal, tortuous, or dangerous conduct.'" Id., quoting Wagoner v. United DairyFarmers, Inc. (Nov. 17, 2000), 1st Dist. No. C-990767.
 {¶ 25} Appellant argues that Hampton was prone to violence and that Ford had knowledge of Hampton's propensity for violence. In this case, Ford has demonstrated that it had no knowledge of Hampton's alleged propensity for violence, and appellant has failed to meet its reciprocal burden of showing that such knowledge exists. See Tompkins, 75 Ohio St.3d at 449.
 {¶ 26} Appellee Hampton testified during his deposition that he had been disciplined as an employee of Ford twice before the alleged incident involving appellant on December 17, 2002. Hampton testified that he was disciplined once for wrecking a forklift and once for cussing at a foreman. He testified that he had never been involved nor accused of being involved in any fights on Ford premises.
 {¶ 27} Mark Bakalar, Ford's hourly personnel administrator at the time of the alleged incident, testified during his deposition that he once told Hampton and some other employees to "take it out in the hall," because their voices were "getting out of hand" during an argument. He testified that no one was touching anyone else in anger during that argument. Mr. Bakalar further testified that he had no knowledge that Hampton had a temper, that he had never heard the nickname "Hammer" in regard to Hampton, and that he was not aware of any prior altercations between Hampton and any other Ford employee. In addition, Mr. Bakalar testified that he was not aware of any prior grievances having been filed against Hampton.
 {¶ 28} Kim Nagyvathy, supervisor of labor relations and hourly personnel at Ford, testified during her deposition that Ford has policies pertaining to employee violence. She further testified that she was responsible for investigating the alleged incident of December 17, 2002. Ms. Nagyvathy testified that she became aware of Hampton's argument on December 16, 2002 with some other employees only after appellant reported Hampton's alleged December 17, 2002 attack. She testified that she understood the December 16, 2002 argument to be only verbal in nature. She testified that "verbal issues" were a daily occurrence at Ford and not something which would normally be brought within the scope of her investigative duties.
 {¶ 29} Ms. Nagyvathy testified during her deposition that she was not aware that Hampton had a nickname at Ford. She further testified that she attempted to identify prior disciplinary actions against Hampton during her investigation of the incident but that she found none. She testified that she had no knowledge of any prior altercations between Hampton and any other Ford employee. In addition, in reviewing Hampton's application for employment, Ms. Nagyvathy acknowledged that Hampton had checked "no" in response to the query whether he had any prior felony convictions. She testified that Ford would expect any prospective employee to be truthful in regard to his answers on the application.
 {¶ 30} Appellant testified during his deposition that "they" call Hampton "Hammer," because "he's all the time hammering on people." However, when appellant later elaborated, he testified that Hampton is "all the time hammering on people, in the bowling alleys, golf courses, everything, you know." Appellant failed to identify any instance in which Hampton "hammered" on anyone at Ford.
 {¶ 31} Appellant testified that he believes that Ford was negligent in failing to curtail Hampton's conduct, because Hampton has always been domineering and overbearing. However, appellant repeatedly testified that he had no facts to indicate that Ford was aware of any alleged altercations or instances of violence between Hampton and any other person on Ford premises. Specifically, when counsel inquired regarding what facts appellant had to show that Ford knew about an alleged altercation between Hampton and Bill Collins of Ford, appellant testified, "I don't' have no — I don't have no facts on that." When counsel inquired regarding what evidence or proof appellant had that Ford was aware of an alleged altercation between Hampton and Paul Simpson of Ford, appellant testified,
"I don't know. I can't answer that and be honest with you about it, you know. I'm not going to say they did or didn't, because I don't know. I know what Paul Simpson told me, but I don't know if there was a — if it was reported to labor relations or not."
When counsel inquired about evidence of Ford's knowledge of an alleged incident between Hampton and Robert Wiegand of Ford, appellant testified,
"That was in the Union office in the plant. And I doubt if they did, they wouldn't have made Ford or whatever aware of it, or they would have all got fired. I'm just going to be honest with you. Ford wasn't responsible for that, just like with Hampton. It wasn't Ford's problem. They inherited a problem. * * * I don't have no facts of [Ford's knowledge about that incident.]"
Finally, when counsel asked appellant whether he had disclosed all the facts upon which he believed that Ford knew of any of the alleged altercations involving Hampton, appellant testified,
"I honestly don't know if they knew of all the altercations, because if they did, Hampton wouldn't have been there to assault me. So I got to say they probably didn't know it. [Hampton] was just an overbearing person."
 {¶ 32} This Court finds that the trial court did not err by granting summary judgment in favor of Ford on appellant's claim alleging negligent hiring, retention or supervision. Even assuming arguendo that Hampton was prone to violence, there is no evidence that Ford had any knowledge, either actual or constructive, of such propensity. Both Ford's hourly personnel administrator and its supervisor of labor relations and hourly personnel testified that they had no knowledge of any physical or violent altercations involving Hampton on Ford premises. Neither Ford employee was aware of Hampton's alleged nickname, "Hammer." Significantly, appellant admitted repeatedly that he had no facts to show that Ford was aware of any prior physical altercations involving Hampton. Accordingly, there is no genuine issue of material fact regarding Ford's knowledge, and Ford is entitled to judgment as a matter of law in regard to appellant's claim alleging negligent hiring, supervision or retention of Hampton.
 {¶ 33} To prevail on his claim under the doctrine of respondeat superior, appellant must show (1) that a principal-agent relationship existed between Ford and Hampton, and (2) that Hampton's tortious conduct was committed within the scope of his employment/agency. Blaser v. BW-3 (May 19, 1999), 9th Dist. No. 98CA007054. This Court further stated:
"If the tort consisted of a willful and malicious act, then it is generally not considered within the scope of employment. For that type of act to be within the scope of employment, the behavior giving rise to the tort must have been `calculated to facilitate or promote the business for which the [employee] was employed.' [Ford was] entitled to summary judgment, therefore, if [it] demonstrated that [Hampton's] alleged battery against plaintiff did not facilitate or promote [its] business activities." (Internal citations omitted.) Id.
 {¶ 34} The alleged battery arose out of an incident involving Hampton, a Ford employee at the time, and appellant, a retiree of Ford. Hampton testified that he believed that retirees were only allowed access to certain limited areas of the Ford plant, and he challenged appellant's presence in the aisleway. A union election was taking place that day, and Hampton was concerned that appellant was entering the plant to campaign for one of the candidates. When appellant asserted that he was permitted to be in the plant, Hampton requested that they enter the labor relations office to inquire. Appellant alleged that Hampton was attempting to physically remove him from the premises.
 {¶ 35} Hampton testified during his deposition that he had no responsibility to remove persons from the Ford plant, even if he believed they did not belong in the plant. He testified that his responsibility would be only to report the matter to a supervisor or labor representative.
 {¶ 36} Ms. Nagyvathy testified that Hampton worked for Ford as a utility checker, that Hampton was not assigned to plant security, and that it was not within his scope of employment to remove anyone from the premises. She testified that it was the duty of security or labor relations to confront anyone who should not be on the premises.
 {¶ 37} Finally, appellant testified during his deposition that Hampton was not a security guard and that Hampton should have gone "to the proper people," if appellant was not allowed in the plant. Appellant further testified that Hampton's job was to build cars and trucks, not to be fighting with people. Finally, when asked to clarify his allegation that Hampton was acting in the scope of his employment at Ford at the time of the alleged battery, appellant testified, "He wasn't acting in his employment at Ford Motor Company. He wasn't no guard or security or that. He had no business even approaching me, you know."
 {¶ 38} This Court finds that the trial court did not err by granting summary judgment in favor of Ford on appellant's claim alleging liability under a theory of respondeat superior. Assuming that Hampton attacked appellant, Ford presented evidence that Hampton was not acting within the scope of his employment during the altercation. Both Hampton and Ford's supervisor of labor relations and hourly personnel testified that escorting people out of the plant was outside the scope of Hampton's employment. Significantly, appellant testified that Hampton was not acting within the scope of his employment, when he confronted appellant and attempted to eject him from the plant. Appellant presented no evidence to rebut Ford's evidence that any attack by Hampton on appellant was outside the scope of his employment. Accordingly, no genuine issue of material fact exists in this regard and Ford is entitled to judgment as a matter of law on appellant's claim alleging Ford's liability under the theory of respondeat superior.
 {¶ 39} This Court has addressed the issue of premises liability as follows:
"When land is held open to the public for business purposes, liability may attach to the landowner for harm caused an invitee by the conduct of a third person who endangers the safety of the invitee. This rule does not make a landowner an insurer of an invitee's safety while the invitee is on the premises. Rather, a landowner has a duty to protect a business invitee from the criminal acts of third persons if the landowner knows, or should have known, in the exercise of ordinary care, of the danger posed to the invitee." (Internal citations omitted.) Blaser, supra.
 {¶ 40} Appellant testified that he was in the Ford plant on December 17, 2002, to visit the education center to inquire about computer classes and to campaign for one of the candidates for union president. Both purposes were for his own benefit, rather than for the benefit of Ford. Ms. Nagyvathy testified during her deposition that Ford receives no benefit when retirees such as appellant come onto Ford premises under those circumstances. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." Light v. Ohio Univ. (1986),28 Ohio St.3d 66, 68. Accordingly, there is no evidence that appellant was an invitee on Ford's property. Rather, appellant appears to have been a licensee, "a person who enters the premises of another by permission or acquiescence, for his own
pleasure or benefit, and not by invitation[.]" (Emphasis in original.) Id. "A licensee takes his license subject to its attendant perils and risks. The licensor is not liable for ordinary negligence and owes the licensee no duty except to refrain from wantonly and willfully causing injury." Id., citingHannan v. Ehrlich (1921), 102 Ohio St. 176, paragraph four of the syllabus. In this case, appellant does not allege that Ford wantonly or willfully caused his injuries.
 {¶ 41} Even assuming arguendo that appellant was an invitee, this Court has already found that Ford presented evidence that it did not know, nor should it have known, that Hampton posed a danger on its premises. Appellant presented no evidence to rebut Ford's evidence and to meet his reciprocal burden. SeeTompkins, 75 Ohio St.3d at 449. Accordingly, the trial court did not err by granting summary judgment in favor of Ford on any claim appellant might have alleged in the nature of premises liability. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING THE TRIAL TO BE VIDEOTAPED AND IN TURN ORDERING APPELLANT TO PAY FOR COSTS OF SUCH VIDEOTAPING."
 {¶ 42} Appellant argues that the trial court abused its discretion by denying his request to permit him to testify live before the jury instead of by prerecorded videotaped testimony. Appellant further argues that the trial court erred by ordering appellant to pay for the costs of all videotaping, as the non-prevailing party. This Court finds appellant's first argument well taken, and we decline to address his second argument.
 {¶ 43} The trial court's video jury trial order stated, "All trial testimony will be presented by videotape pursuant to Sup.R. 13, Local Rule 23 and Civil Rule 40." Civ.R. 40 states that "[a]ll of the testimony and such other evidence as may be appropriate may be presented at a trial by videotape, subject to the provisions of the Rules of Superintendence." Sup.R. 13(B), regarding videotape trials, states, in relevant part:
"(1) Authority. Videotape trials are authorized by Civil Rule 40. In videotape trials, videotape is the exclusive medium of presenting testimony irrespective of the availability of the individual witness to testify in person. All testimony is recorded on videotape and the limitations of Civil Rule 32 upon the use of depositions shall not apply.
"(2) Initiation of videotape trial. By agreement of the parties and with the consent of the trial judge all or a portion of testimony and appropriate evidence may be presented by videotape. The trial judge may order the recording of all or a portion of testimony and evidence on videotape in an appropriate case. In determining whether to order a videotape trial, the trial judge, after consultation with counsel, shall consider the costs involved, the nature of the action, and the nature and amount of testimony."
 {¶ 44} The Ohio Supreme Court stated that the word "shall" in former Sup.R. 12(B)(2), now Sup.R. 13(B)(2), "is mandatory rather than discretionary and requires the court to consider the factors after consultation with counsel." Fantozzi v. Sandusky CementProds. Co. (1992), 64 Ohio St.3d 601, 609. The high court reasoned that such an interpretation of the rule is appropriate in view of the state and federal constitutional significance recognized in regard to the right to a trial by jury. Id. TheFantozzi court continued:
"Accordingly, it is reversible error for a trial court to order a prerecorded videotape trial over the objections of all parties to an action unless the court reflects in a journal entry that it has, pursuant to [Sup.R. 13(B)], consulted with the attorneys for the parties and considered the costs involved, the nature of the action and the nature and amount of testimony, that these factors taken together indicate a compelling reason to conduct the trial by videotape and that no cognizable prejudice will be suffered by the parties. In considering whether such error was prejudicial, the reviewing court should take into consideration the parties' constitutional right to trial by jury, giving substantial emphasis to the fact that all parties objected to a videotape trial. The reviewing court should also consider any other factors that may have induced the trial court to order videotaping, with the underlying premise being that the trial court, under such circumstances, should be extremely cautious in entering such an order. When the reviewing court cannot find any compelling reasons for the trial court's order of videotaping over the objection of the parties, the order should be found to be prejudicial error.
"Where there is an objection to a videotape trial, and the trial court has consulted with counsel for the parties and filed an entry setting forth that the court has considered the factors of the rule, but still has ordered a videotape trial, a reviewing court should limit its inquiry to whether the trial court abused its discretion." (Emphasis in original.) Id. at 609-610.
 {¶ 45} In this case, there is nothing in the record to indicate that the trial court consulted with counsel prior to issuing its order that all testimony was to be presented by videotape. There is no dispute that appellee Hampton did not object to a videotape trial to the jury. Furthermore, appellant appears to have acquiesced to the presentation of a videotape trial to the jury, when he began filing notices of video taped depositions of various witnesses expressly "to perpetuate [the witness'] testimony for use at trial." After the filing of several such notices, appellant filed his first motion to clarify or amend the trial court's video jury trial order, requesting in reliance on Fantozzi that appellant (plaintiff) himself be permitted to testify live before the jury in the interest of giving the jury a full and complete opportunity to judge his credibility, as the party with the burden of proof. The trial court declined to rule on appellant's motion for two months until April 7, 2005, the first day of trial. The trial court denied the motion without analysis.
 {¶ 46} On March 24, 2005, appellant filed a second motion to amend the video jury trial order, requesting that he be allowed to present Dr. Gardner's testimony by reading the doctor's deposition to the jury. In support, appellant argued that he had no money to pay for a videotape of the doctor's testimony. The trial court granted this motion without analysis and allowed appellant to read Dr. Gardner's deposition testimony to the jury during trial.
 {¶ 47} Although it appears that the trial judge did not consult with counsel for the parties in regard to either of appellant's motions, it is clear that the trial court did not issue an order evidencing that it had considered the factors set forth in Sup.R. 13(B). However, it is also clear that appellant did not file a blanket objection to the matter proceeding to trial before the jury by way of videotape. He merely requested that certain witness testimony be exempt from the video jury trial order. Accordingly, this Court finds that it is appropriate to apply the abuse of discretion standard of review to determine whether the trial court erred by denying appellant's request to testify live before the jury.
 {¶ 48} An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 49} Recently, the Ohio Supreme Court again addressed the propriety of videotape trials. Arrington v. DaimlerChryslerCorp., 109 Ohio St.3d 539, 2006-Ohio-3257. Although theArrington court discussed the issue within the context of R.C.4123.512 appeals, the high court added a cautionary note applicable to videotape trials generally:
"Our conclusion today should not be read as a broad endorsement of the use of new technologies in all cases. We merely recognize the trial court's authority by operation of Civ.R. 40 and Sup.R. 13(B) to issue orders to proceed with trial by video in `appropriate cases' such as this one, one case among many arising from similar administrative adjudications. In so concluding, we caution that in the great majority of cases, even those not presenting discrete factual or legal issues, the preferred practice remains to permit all parties — and particularly plaintiffs — the right to testify live before a jury when the party so requests." Id. at ¶ 40.
 {¶ 50} In this case, appellant made a clear request that he be permitted to testify live before the jury in the interest of allowing the jury a full and fair opportunity to assess his credibility as the party with the burden of proof. The trial court denied the request without analysis. On the other hand, the trial court granted appellant's request to allow a third party to read the deposition testimony of Dr. Gardner at trial in lieu of presenting that testimony by videotape due to appellant's inability to assume the monetary cost of videotaping the doctor. This Court finds the trial court's actions arbitrary, in that the court denied appellant's request to testify live notwithstanding valid considerations, while it granted appellant's request to allow a third party, who might use personal inflection and emphasis, to read another's deposition to the jury. In the absence of any reasoning to justify the different orders, this Court finds that such disparate treatment of the two motions evidences an arbitrary attitude by the trial court. Accordingly, the trial court erred by denying appellant's motion to allow him to present his testimony live to the jury. Therefore, this matter must be remanded to the trial court for retrial, allowing appellant to testify live before the jury. Appellant's sixth assignment of error is sustained as it relates to the order denying appellant's motion to present his testimony live before the jury. Because this matter must be retried, any imposition of costs is premature. Accordingly, this Court declines to address appellant's assignment of error as it relates to the trial court's order that he pay for the costs of videotaping.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE OF THE TESTIMONY OF TODD GRIFFITH."
 {¶ 51} Appellant argues that the trial court abused it discretion by granting Hampton's motion to exclude any testimony or other evidence regarding a statement made by Todd Griffith, a witness to the incident, to Kim Nagyvathy. In the alternative, appellant argues that the trial court erred by failing to allow appellant to present Todd Griffith's testimony to the jury by videotape. This Court agrees in part and disagrees in part.
 {¶ 52} The decision to admit or exclude evidence lies in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180. This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 53} This Court first addresses the trial court's refusal to allow appellant to present Todd Griffith's videotaped testimony to the jury. We reiterate that appellant never objected to a videotape trial to the jury. Rather, appellant merely sought on two occasions to amend the underlying order to allow two exceptions to the order that all testimony be presented by videotape.
 {¶ 54} The video jury trial order directed that all videotape testimony must be completed and filed with the clerk of courts not later than February 28, 2005. Hampton filed a motion to stagger the due dates for the filing of the parties' videotaped testimony with the clerk. On April 5, 2005, the trial court ordered that appellant must file all of his videotaped evidence for his case-in-chief on or before March 3, 2005; that Hampton must file all of his videotaped evidence for his case-in-chief on or before March 23, 2005; and that all of appellant's videotaped rebuttal evidence must be filed on or before March 28, 2005. Presumably, the trial court otherwise communicated these dates to the parties in advance of March 3, 2005, lest the order be rendered meaningless.[2]
 {¶ 55} Appellant failed to request permission to videotape Todd Griffith's testimony for trial until April 6, 2005. He filed his notice to take video deposition/trial testimony of Todd Griffith on April 4, 2005. Both the request and notice failed to comply with the trial court's order and appellant's agreement to file his videotaped evidence of his case-in-chief and rebuttal evidence by March 3, 2005 and March 28, 2005, respectively. Accordingly, this Court finds that the trial court did not abuse its discretion by refusing to allow appellant to present the videotaped testimony of Todd Griffith beyond the time limitations agreed by the parties.
 {¶ 56} On the other hand, this Court finds that the trial court abused its discretion by excluding all testimony or other evidence of Mr. Griffith's statement regarding his witness of the December 17, 2002 incident involving appellant and Hampton.
 {¶ 57} Evid.R. 803 provides, in relevant part:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *"
 {¶ 58} In this case, Kim Nagyvathy, Ford's supervisor of labor relations and hourly personnel, testified during her trial deposition that she conducted an investigation regarding the December 17, 2002 incident in a manner consistent with how she customarily conducted such investigations. She testified that Todd Griffith made a statement to her on December 17, 2002, which she endeavored to write down as accurately as she could. She testified that Mr. Griffith then signed that statement in her presence. Under these circumstances, it is clear that Ms. Nagyvathy, as the employee charged with conducting such investigations, was a witness qualified to testify about Ford's practices. Mr. Griffith's statement of the events he witnessed was made close in time to the incident. Accordingly, unless Hampton can show that the source of information or method or circumstances of the preparation of the statement lack trustworthiness, the trial court should not have excluded the statement.
 {¶ 59} Hampton argues that the source, method or circumstances lack trustworthiness because Mr. Griffith later testified in his discovery deposition that he never saw Hampton throwing appellant into the railing. In Mr. Griffith's statement to Ms. Nagyvathy, he asserted that he witnessed Hampton bumping appellant and then throwing him into the railing. Hampton argues that such discrepancies indicate a lack of trustworthiness regarding Mr. Griffith's statement to Ms. Nagyvathy. This Court disagrees. Rather, this Court agrees with appellant that any discrepancy goes only to the issue of weight and not the admissibility of the statement. This Court finds that the trial court abused its discretion by granting Hampton's motion to exclude all testimony and evidence regarding Todd Griffith's statement regarding the incident. Accordingly, appellant's second assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE OF DISCIPLINARY ACTION AGAINST APPELLEE JAMES HAMPTON."
 {¶ 60} Appellant argues that the trial court abused its discretion by excluding all evidence and testimony regarding any disciplinary action taken against Hampton by Ford as a result of Ford's investigation of the December 17, 2002 incident. This Court agrees.
 {¶ 61} The decision to admit or exclude evidence lies in the sound discretion of the trial court. Sage,31 Ohio St.3d at 180. This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore,5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 62} Appellant argues that evidence of the disciplinary measures taken against Hampton by Ford was admissible as relevant pursuant to Evid.R. 402.
 {¶ 63} Evid.R. 402 provides that relevant evidence is generally admissible. Evid.R. 403 provides two exceptions to the general rule, including:
"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 64} Hampton argued in his motion in limine that the evidence must be excluded because the probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, and/or of misleading the jury. The trial court agreed. Neither side has provided this Court with case law on this issue.
 {¶ 65} Hampton testified in deposition that he agreed to a one-week suspension from Ford without pay, because he was afraid he would be fired if he did not accept such discipline. He testified that it was part of the deal that he would maintain his employment in exchange for accepting the week's suspension without a challenge. Hampton consistently denied battering appellant.
 {¶ 66} In her deposition, Ms. Nagyvathy testified that she disciplined Hampton for the incident, notwithstanding contradictory statements by witnesses and alleged participants, for the sole purpose of maintaining peace in the plant. The disciplinary action report does not enunciate a definitive statement of Hampton's culpability. Rather, it states that Hampton is being charged with misconduct, that he was witnessed in a confrontation with appellant, and that Ford cannot condone such behavior by Hampton even though he felt appellant provoked him.
 {¶ 67} Under these circumstances, where the evidence showed that Ford asserted that it disciplined Hampton only to maintain peace within the working environment rather than as a sanction for his indisputable wrongdoing, and where Hampton consistently denied any wrongdoing, this Court finds that the trial court abused its discretion by excluding the evidence for the reason that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. Rather, it was reasonable that the jury hear the evidence and, with an appropriate instruction from the court, draw its own conclusions as to the appropriate weight to accord the evidence. Appellant's third assignment of error is sustained.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE OF AGGRAVATION OF A PREE-XISTING MEDICAL CONDITION."
 {¶ 68} Appellant argues that the trial court abused its discretion by excluding Dr. Ernest Marsolais' testimony whereby he read from a letter he had written to appellant's counsel regarding appellant's pre-existing medical condition. This Court disagrees.
 {¶ 69} The decision to admit or exclude expert testimony lies in the sound discretion of the trial court. Estate of Raymond v.Goodyear Tire Rubber Co. (Aug. 23, 2000), 9th Dist. No. 19701, citing Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607,616. This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore,5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 70} Hampton asserts that the trial court properly excluded for lack of foundation Dr. Marsolais' testimony whereby he read from a letter his mere conclusory opinion regarding appellant's pre-existing medical condition. This Court agrees.
 {¶ 71} Evid.R. 703 and 705 set forth the foundational requirements for an expert's opinion testimony. Estate ofRaymond, supra, citing Patrick v. Painesville CommercialProperties (1997), 123 Ohio App.3d 575, 586. Evid.R. 705 provides:
"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 72} This Court has stated:
"The purpose of Evid.R. 705 is to aid the trier of fact in assessing the validity of the expert's opinion. Requiring the expert to inform the jury of the basis supporting his or her opinion is both sensible and logical. * * * The opinion would be irrelevant and misleading if grounded on facts ultimately discounted by the trier of fact. * * * Thus, the trier of fact cannot adequately assess the validity of expert testimony without knowing the particular facts which support the expert opinion. By requiring disclosure of the facts or data underlying the opinion prior to rendering the opinion, Ohio Rule 705 seeks to aid the trier of fact in its assessment of the validity of the expert's opinion." Estate of Raymond, citing 1 Weissenberger's Ohio Evidence (1993), 18, Section 705.2. (Footnotes omitted.), quoted in Wells v. Miami Valley Hosp. (1993), 90 Ohio App.3d 840, 857.
 {¶ 73} In this case, appellant compelled Dr. Marsolais to read a mere conclusory opinion statement from his report without any disclosure of the underlying facts or data. Here, appellant failed to comply with the mandates of Evid.R. 705 and lay a proper foundation for the admission of Dr. Marsolais' testimony. Accordingly, the trial court did not abuse its discretion by excluding such testimony. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING CERTAIN TESTIMONY OF APPELLEE JAMES HAMPTON'S EXPERT WHICH LACKED A PROPER FOUNDATION."
 {¶ 74} Appellant argues that the trial court abused its discretion by allowing Dr. Howard Tucker, Hampton's expert, to testify regarding his findings as to appellant's psychological/psychiatric condition without first laying a proper foundation. In particular, appellant argues that Dr. Tucker improperly based his opinion on a report by Dr. Byong Ahn regarding his psychiatric evaluation of appellant. This Court disagrees.
 {¶ 75} The decision to admit or exclude expert testimony lies in the sound discretion of the trial court. Estate of Raymond,
supra, citing Miller, 80 Ohio St.3d at 616. This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons,66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 76} Evid.R. 702 addresses testimony by experts:
"A witness may testify as an expert if all of the following apply:
"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 77} Evid.R. 703 addresses the bases of opinion testimony by experts. The rule states:
"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at hearing."
 {¶ 78} In this case, Dr. Tucker testified that he is licensed to practice medicine, that he is Board certified in adult and child neurology, and that he is Board qualified in psychiatry. Because he is Board qualified in psychiatry, Dr. Tucker was qualified to testify as an expert regarding appellant's psychiatric condition. Dr. Tucker further testified that he examined appellant on one occasion, and that as a neurologist who began his training in 1950, he was taught to make a diagnosis based upon one examination.
 {¶ 79} Dr. Tucker testified that appellant told him about numerous symptoms, which he could not verify. In addition, Dr. Tucker testified that appellant told him about numerous "treatments" for various conditions, the efficacy of which treatments Dr. Tucker could not verify as a physician. Based on appellant's statements to him during his evaluation, Dr. Tucker testified that appellant has somatic delusions, i.e., distortions of realty in which appellant is deluded or has a concept that something dreadful has happened to his structural body, and it is not based on fact or realty. Dr. Tucker did not testify that he based his opinion on anything in Dr. Ahn's report. Further, Dr. Tucker's report, which referenced the evaluations of appellant by various doctors including Dr. Ahn, was not admitted into evidence.
 {¶ 80} Dr. Tucker was qualified as an expert in psychiatry based on his specialized knowledge, experience, training and education. Furthermore, he based his opinion regarding appellant's psychiatric condition upon his personal perceptions of appellant during an evaluation. Accordingly, Hampton laid a proper foundation for Dr. Tucker's expert opinion testimony. Under these circumstances, the trial court did not abuse its discretion by admitting Dr. Tucker's testimony in this regard. Appellant's fifth assignment of error is overruled.
 IV. {¶ 81} Appellant's first, fourth and fifth assignments of error are overruled. Appellant's second assignment of error is sustained to the extent discussed. Appellant's third assignment of error is sustained. Appellant's sixth assignment of error is sustained as it relates to the order denying appellant's motion to present his testimony live before the jury. This Court declines to address appellant's sixth assignment of error as it relates to the trial court's order that he pay for the costs of videotaping. Accordingly, the judgment of the Lorain County Court of Common Pleas is affirmed, in part, and reversed, in part, and remanded for further proceedings consistent with this decision.
Judgment affirmed, in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Moore, J. Boyle, J. concur.
[1] Appellant specifically alleged that "Ford Motor Company negligently hired and or had Hampton on its premises which lead [sic] to the injuries of Plaintiff." In a later brief in opposition to Ford's motion for summary judgment, appellant argues that he has properly pled a claim alleging premises liability, in addition to his claims alleging liability under a theory of respondeat superior and his negligent hiring/retention claim.
[2] In fact, the attorneys of both appellant and Hampton signed the journal entry, indicating that they were aware of and in agreement with these dates.