DECISION.
{¶ 1} Defendant-appellant, Michael Simmons, pleaded guilty to four counts of felonious assault under R.C. 2903.11(A)(2), with accompanying firearm specifications, one count of trafficking in cocaine under R.C. 2925.03(A)(2), and one count of carrying a concealed weapon under R.C. 2923.12(A). Under an agreed sentence, he received a total of 20 years' imprisonment. Subsequently, he filed a motion to withdraw his guilty pleas, which the trial court overruled. This appeal followed.
 {¶ 2} Originally, Simmons's appointed counsel had filed a brief and a motion to withdraw under Anders v.California,[1] stating that he could find no error in the proceedings below and asking this court to review the record and determine if the proceedings were free from prejudicial error. Simmons later retained counsel, who filed a motion to continue the case and to file an amended brief. This court granted that motion, and we address those issues raised in the amended brief.
 {¶ 3} Simmons presents two assignments of error for review. In his first assignment of error, he states that the trial court erred in sentencing him. He contends that the provisions of the sentencing statutes that the Ohio Supreme Court declared unconstitutional in State v. Foster[2] were the basis of his sentence. Therefore, he argues, this court should vacate the sentence. This assignment of error is not well taken. Further, though he frames the assignment of error as one involving sentencing issues, Simmons argues that his plea was involuntary. We address the issues relating to the plea under Simmons's second assignment of error.
 {¶ 4} Under R.C. 2953.08(D), an agreed sentence is not subject to appellate review if it is authorized by law.[3]
A sentence is authorized by law if it is within the statutory range of possible sentences and does not exceed the maximum term authorized for the offense.[4] This statute prevents an appellate court from reviewing any agreed sentence as long as it is within the statutory range, even if implicatesFoster.[5]
 {¶ 5} In this case, the sentences imposed for the six offenses to which Simmons pleaded guilty were all within the statutory range of allowable sentences.[6] Consequently, R.C. 2958.08(D) puts the sentences beyond our review, and we are without jurisdiction to vacate them.[7] We, therefore, overrule Simmons's first assignment of error.
 {¶ 6} In his second assignment of error, Simmons contends that the trial court erred in overruling his motion to withdraw his guilty pleas. He argues that his pleas were involuntary because of the court's failure to inform him at the plea hearing that he would be ineligible for judicial release, its involvement in the plea bargain, and its improper explanation of the sentencing scheme, which was later declared unconstitutional. Therefore, he argues, this court should vacate the pleas and remand the case for further proceedings. This assignment of error is not well taken.
 {¶ 7} Before we reach the merits of this assignment of error, we must address a procedural issue. The record shows that the trial court entered a judgment of conviction on September 27, 2005. Simmons filed a motion to withdraw his guilty pleas on October 4, 2005. The trial court held a hearing on the motion and journalized an entry overruling it on October 5. Simmons filed a notice of appeal on October 19, but it stated only that he was appealing the court's judgment entered on September 27.
 {¶ 8} App.R. 3(D) requires the notice of appeal to designate the judgment or order from which the party has appealed. Generally, an appellate court is without jurisdiction to review a judgment or order that is not designated in the notice of appeal.[8] But the Ohio Supreme Court has held that the purpose of this rule is to provide notice to the other party of the taking of an appeal. If the other party is reasonably apprised of what judgment the appellant is appealing, the purpose of the notice of appeal is accomplished, and any technical defects are not jurisdictional.[9]
 {¶ 9} In this case, Simmons filed his notice of appeal after the denial of his motion to withdraw his guilty pleas. Though it only specifically referred to the September 27 judgment of conviction, we conclude that it provided adequate notice to the state of the issues that Simmons was appealing. Therefore, the omission of the October 5 judgment entry in the designation of the judgment appealed from was not a jurisdictional defect.[10]
 {¶ 10} Turning to the merits of this assignment of error, we note that while R.C. 2953.08(D) forecloses review of the agreed sentences, it does not prevent an appellate court from reviewing the validity of the pleas that resulted in the sentences.[11] The basic tenets of due process require that a guilty plea be made "knowingly, intelligently, and voluntarily."[12]
 {¶ 11} Crim.R. 11(C) "was adopted * * * to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review."[13] A court must strictly comply with the provisions of Crim.R.11(C) relating to the constitutional rights enumerated in Boykin v.Alabama[14] that a defendant waives by entering a plea.[15] But Crim.R. 11(C) also requires the court to inform the defendant of other matters before accepting a plea, such as the maximum sentence that the court could impose and if the defendant is eligible for probation.[16] A court must substantially comply with the provisions of Crim.R. 11(C) regarding these other notifications.[17]
 {¶ 12} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. * * * The test is whether the plea would have otherwise been made."[18]
 {¶ 13} First, Simmons contends that the court failed to comply with the dictates of Crim.R. 11(C) because it failed to inform him that he would be ineligible for judicial release. Judicial release, as with the former concept of parole, is distinct from sentencing because it reduces a prison term that a court has already imposed. Therefore, the trial court need not inform a defendant about his eligibility for judicial release unless it is incorporated into a plea bargain.[19] As the Ohio Supreme Court has stated, "a defendant who bases a plea decision on parole eligibility will often be relying on a factor beyond the prediction of defense counsel, and beyond the actual control of the defendant."[20]
 {¶ 14} Further, the record does not show that but for the court's failure to inform Simmons at the plea hearing about his ineligibility for judicial release, he would not have entered his plea. The trial court informed Simmons of the maximum possible sentences for the charges to which he pleaded guilty. It specifically told him that it would impose the 20-year sentence to which the parties had agreed. It also told him that he would have to serve that entire sentence and that only the time that he had already served would be deducted. Further, the written plea form that Simmons signed stated that he was ineligible for any type of early release. Simmons acknowledged that he had read and understood the plea form, that his attorney had explained it to him, and that he did not have any questions about it.
 {¶ 15} Simmons also contends that "the heavy-handed impatience of the court in its involvement in the plea bargain and the improper explanation to the defendant by the Court of the sentencing limits, even though the limits were later declared unconstitutional, requires vacating the plea and remand for trial." He argues that he was an 18-year-old first-time offender and that he was given a plea offer on the day of trial. He contends that he had less than an hour to make a momentous decision and that the court pressured him to decide.
 {¶ 16} The record shows that the state offered a plea bargain to Simmons on the morning of September 27, 2005, the day of trial. While it was the first time Simmons had heard about the offer, discussions between the state and defense counsel had been ongoing. Simmons and his defense counsel both consulted with Simmons's family members. Finally, the trial court acknowledged that Simmons was facing a big decision, but stated that it was "decision time." It noted that the case had been scheduled for trial since July 21, 2005, and that "we've got the jurors upstairs." Still, the trial court granted Simmons another short recess to decide what he wanted to do. After the recess, Simmons decided to enter guilty pleas.
 {¶ 17} This was not a case where the trial court was inappropriately involved in the plea bargain.[21] The court did not encourage Simmons to plead guilty or attempt to entice him with the merits of the offer. It did not threaten him with any punishment for exercising his right to a jury trial. It simply told him he would have to decide between taking the plea bargain and going forward with a jury trial that had been scheduled for several months. This was not heavy-handed behavior by the trial court.
 {¶ 18} Simmons also contends that he was not adequately informed of the nature of the charges and the penalties. The record shows otherwise. The trial court clearly explained the charges against Simmons, the maximum penalties that Simmons could have received, and the agreed sentence that the court would impose. In sum, the trial court strictly complied with the provisions of Crim.R. 11(C) regarding the constitutional rights Simmons would waive by pleading guilty and substantially complied with the rule in all other respects.[22] The trial court conducted a meaningful dialogue to ensure that Simmons's pleas were made knowingly, intelligently, and voluntarily.
 {¶ 19} Finally, Simmons contends that he received poor and threatening advice from his attorney. He claims that his attorney failed to communicate with him about the ongoing plea negotiations. At the hearing on his motion to withdraw his pleas, Simmons contended his counsel was "pushy" and told him that "he needed to take this or he was looking at many, many years, potentially, in prison." But even his new counsel acknowledged that "we all know that is potentially true if he went to trial and lost, that he might very well do more than 20 years."
 {¶ 20} In fact, Simmons was indicted on numerous charges and faced substantially more than 20 years' imprisonment if he went to trial. The court dismissed 13 counts of the indictment as part of the plea bargain. Thus, the record shows that Simmons made a valid choice between alternatives.[23] It does not demonstrate that but for counsel's unprofessional errors, Simmons would not have entered his pleas.[24]
 {¶ 21} A defendant may withdraw a guilty plea after sentencing only "to correct a manifest injustice."[25] The decision whether to grant a post-sentence motion to withdraw a plea lies within the trial court's discretion. An appellate court will not disturb the trial court's decision absent an abuse of discretion.[26]
 {¶ 22} Though Simmons did have a momentous decision to make, the record shows that he made a knowing and voluntary decision to enter his pleas with the assistance of counsel and his family members. The trial court afforded him a full hearing, and he was aware of the rights he was waiving by pleading guilty and of the sentence he faced. Nothing in the record shows that his pleas were coerced in any manner. The record shows only that he had a change of heart after sentencing.
 {¶ 23} Simmons has failed to demonstrate that a withdrawal of his pleas was necessary to correct a manifest injustice. The trial court's decision to overrule his motion to withdraw his pleas was not so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion.[27] Consequently, we overrule Simmons's second assignment of error.
 {¶ 24} Finally, we have found a minor error in the judgment entry in this case. It states that "[t]he sentences imposed in Counts #7 and #8 are to be served concurrently with each other but consecutively to the sentences imposed in counts #7 and#8." (Emphasis added.) This is obviously a clerical error. The record from the plea and sentencing hearing shows that the sentences for counts 7 and 8 were to be served consecutively to the sentences for counts 2 and 4. Though a court speaks only through its journal, Crim.R. 36 allows for the correction at any time of clerical mistakes due to oversight or omission. Further, App.R. 9(E) allows this court to direct that the misstatement be corrected. We, therefore, remand the case to the trial court to correct the typographical error in the sentencing entry.[28] We affirm the trial court's judgment in all other respects.
Judgment affirmed and cause remanded.
Gorman, P.J., Sundermann and Winkler, JJ.
Winkler, retired, from the First Appellate District, sitting by assignment.
[1] (1967), 386 U.S. 738, 87 S.Ct. 1396.
[2] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[3] State v. Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095,829 N.E.2d 690, ¶ 25; State v. Jackson, 8th Dist. No. 86506,2006-Ohio-3165, ¶ 47-48.
[4] Jackson, supra, at ¶ 48; State v. Sattiewhite, 8th Dist. No. 79365, 2002-Ohio-332; State v. Engleman (Aug. 18, 2000), 1st Dist. No. C-990845.
[5] Jackson, supra, at ¶ 51-53; State v. Woods, 2nd Dist. No. 05CA0063, 2006-Ohio-2325, ¶ 14-15.
[6] R.C. 2929.14(A)(2) and (A)(4).
[7] Jackson, supra, at ¶ 52-53; Woods, supra, at ¶ 15.
[8] Thomas v. Price (1999), 133 Ohio App.3d 585, 588,729 N.E.2d 427; Parks v. Baltimore Ohio RR. (1991),77 Ohio App.3d 426, 428, 602 N.E.2d 674.
[9] Maritime Manufacturers, Inc. v. Hi-Skipper Marina (1982),70 Ohio St.2d 257, 258-259, 436 N.E.2d 1034.
[10] See Armbruster v. Hampton, 9th Dist. No. 05CA008716,2006-Ohio-4530, ¶ 13-18, distinguishing State v. Dixon, 9th Dist. No. 21463, 2004-Ohio-1593, ¶ 6-7.
[11] State v. Scott, 11th Dist. No. 2003-T-0172,2005-Ohio-689, ¶ 3; State v. Tillman, 6th Dist. No. H-02-004,2004-Ohio-1967, ¶ 12; Sattiewhite, supra.
[12] State v. Engle, 74 Ohio St.3d 525, 527, 1996-Ohio-179,660 N.E.2d 450; Akron v. Hendon, 9th Dist. No. 22791,2006-Ohio-1038, ¶ 4.
[13] State v. Nero (1990), 56 Ohio St.3d 106, 107,564 N.E.2d 474.
[14] (1969), 395 U.S. 238, 89 S.Ct. 1709.
[15] State v. Ballard (1981), 66 Ohio St.2d 473, 476-478,423 N.E.2d 115; State v. McCann (1997), 120 Ohio App.3d 505,507-508, 698 N.E.2d 470.
[16] Nero, supra, at 107-108, 564 N.E.2d 474; State v.Johnson (1988), 40 Ohio St.3d 130, 132-133, 532 N.E.2d 1295.
[17] Ballard, supra, at 475-476, 423 N.E.2d 115; State v.Gulley, 1st Dist. No. C040675, 2005-Ohio-4592, ¶ 17.
[18] Nero, supra, at 108, 564 N.E.2d 474 (citations omitted).
[19] State v. Mitchell, 11th Dist. No. 2004-T-0139,2006-Ohio-618, ¶ 14. See, also, State v. Cline, 10th Dist. No. 05AP-869, 2006-Ohio-4782, ¶ 15-17.
[20] Mitchell, supra, at ¶ 14, quoting State v. Xie (1992),62 Ohio St.3d 521, 524-525, 584 N.E.2d 715.
[21] See State v. Byrd (1980), 63 Ohio St.3d 288, 291-294,407 N.E.2d 1384; Hendon, supra, at ¶ 12-14.
[22] See Nero, supra, at 107-108, 564 N.E.2d 474; Ballard,
supra, at 475-478, 423 N.E.2d 115; McCann, supra, at 507-508,698 N.E.2d 470.
[23] See State v. Holloman, 1st Dist. No. C-030391,2004-Ohio-2178, ¶ 14.
[24] Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366;State v. Peoples, 1st Dist. No. C-050620, 2006-Ohio-2614, ¶22.
[25] Crim.R. 32.1; Peoples, supra, at ¶ 20.
[26] Id.
[27] See State v. Clark, 71 Ohio St.3d 466, 470,1994-Ohio-43, 644 N.E.2d 331.
[28] See State v. Boyd, 8th Dist. Nos. 82921, 82922, and 82923, 2004-Ohio-368, ¶ 14-15; State v. Lattimore, 1st Dist. No. C-010488, 2002-Ohio-723.