OPINION.
{¶ 1} Defendant-appellant, Sorrell Canady, appeals convictions that were the result of a plea agreement. He was sentenced on May 12, 2005. On March 23, 2006, he requested leave to file a delayed appeal, which we granted "only as to the issue of whether his plea was entered voluntarily." We affirm his convictions and sentences.
 Background {¶ 2} On August 1, 2004, Canady was driving a vehicle under the influence of alcohol when he crossed the double-yellow line and crashed into a vehicle driven by Joseph McMahan. McMahan suffered serious injuries as a result of the crash. Canady left the scene, but was apprehended and taken to the hospital because he also was injured in the accident. While under arrest at the hospital, he left without permission. Canady was driving under a license suspension when the collision occurred.
 {¶ 3} Canady was indicted for aggravated vehicular assault in violation of R.C. 2903.08(A)(1), a second-degree felony,[1] vehicular assault in violation of R.C. 2903.08(A), a third-degree felony,[2]
failure to stop after an accident in violation of R.C. 4549.02, a fifth-degree felony,[3] and escape in violation of R.C. 2921.34, a second-degree felony.[4] Collectively, these charges represented potential consecutive sentences of 22 years' incarceration.[5]
 {¶ 4} To resolve the charges, Canady entered into a plea agreement that included an agreed sentence. The court accepted Canady's guilty plea and the agreement. Under the agreement, Canady's sentence included the following concurrent periods of incarceration: seven years for aggravated vehicular assault, six months for failure to stop after an accident, and two years for escape. The vehicular-assault charge was dismissed. Pursuant to the agreement, the court also suspended Canady's driver's license for life, terminated Canady's community control on two unrelated cases, and ordered Canady to pay specified restitution and court costs.
 First Assignment of Error {¶ 5} In his first assignment of error, Canady argues that his plea was not voluntary because his plea agreement and plea were made under sentencing provisions declared unconstitutional by State v.Foster.[6] We do not agree.
 {¶ 6} We have limited ability to review agreed sentences. We recently stated in State v. Simmons[7] that, "[u]nder R.C. 2953.08(D), an agreed sentence is not subject to appellate review if it is authorized by law. A sentence is authorized by law if it is within the statutory range of possible sentences and does not exceed the maximum term authorized for the offense. This statute prevents an appellate court from reviewing any agreed sentence as long as it is within the statutory range, even if [it] implicates Foster."[8] (Citations omitted.) The Eighth Appellate District has come to the same conclusion in State v.Richardson.[9]
 {¶ 7} Canady's sentence was authorized by law. The terms of incarceration he received were within the statutory ranges allowed, and none exceeded the maximum term allowed. The statutory range of prison terms for a second-degree felony is two to eight years[10] and for a fifth-degree felony, six to twelve months.[11]
 {¶ 8} We acknowledged in Simmons[12] that while we are foreclosed from reviewing an agreed sentence, we are not prevented from reviewing the validity of the plea leading to the agreed sentence. Constitutional principles require that a guilty plea be made "knowingly, intelligently, and voluntarily."[13] Crim.R. 11(C) "was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review."[14]
 {¶ 9} Moreover, we do not believe that the changes Foster made in Ohio's sentencing scheme have any effect on whether a plea is voluntary.Foster did not change Crim.R. 11 or the basic elements of any offense. Nor did it change the basic prison terms provided in R.C. 2929.14(A) or any other penalty.
 {¶ 1O} The record shows that when Canady pleaded guilty, the court personally addressed him and strictly complied with Crim.R. 11(C) prior to accepting his guilty plea and finding him guilty. Canady even acknowledges in his brief that "the trial court appeared to comply with Criminal Rule 11 at the time of the plea and sentencing."
 {¶ 11} The trial court's Crim.R. 11(C) explanation to Canady included the following. The court explained the meaning of a guilty plea and that after accepting the plea, the court could proceed to judgment and sentence. The court further explained that Canady's sentence would be seven years in prison and determined that no inappropriate promises or threats had been made to induce Canady's plea. It also explained to him the maximum penalties for each of the charges to which he was pleading guilty, telling him that he faced up to a maximum of 17 consecutive years in prison.
 {¶ 12} The court explained that judicial release was not possible during mandatory prison time and that the time would be served without good-time reduction. Canady was told he would face court costs, restitution, and a lifetime driver's license suspension. Community-control and post-release-control matters, as well as the penalty for violating post-release control, were explained to Canady. The court also informed Canady of the penalty if he committed a new felony while on post-release control. Canady was asked whether and affirmed that he understood the charges and possible penalties.
 {¶ 13} Canady was specifically informed by the court that the agreed sentence meant he would serve a sentence of seven years and that he would not be "eligible for intensive prison programs, transitional control, judicial release or other early release." Defense counsel, the prosecutor, and Canady then addressed the court on the agreed sentence. Then, the court addressed Canady, stating, "Thank you, Mr. Canady. Do you have any other questions, or is there anything else that you'd like to ask the court or to consult with [your attorney]." Canady replied, "No, ma'am."
 {¶ 14} The trial court then advised Canady of his constitutional rights. The court informed him, "Sir, I want to review with you certain rights you have, and I want to make sure that you understand that, by pleading guilty, you are giving up those rights." The court advised Canady that he had a right to a jury trial; that at trial, the prosecutor would have to prove him guilty beyond a reasonable doubt; that Canady had a right to confront and cross-examine witnesses against him; that Canady could require witnesses to come to court by subpoena; and that he could not be compelled to testify against himself. The court explained that if Canady did not testify, his silence could not be commented on or used against him. In response to the court, Canady indicated that he had no questions about these rights. The court then asked Canady, "Do you wish to voluntarily waive those rights and enter pleas of guilty today?" Canady replied, "Yes, ma'am."
 {¶ 15} The written guilty plea that Canady signed also explained the potential penalties, the agreed sentence, and his rights. In response to questioning by the court, Canady indicated that he had read the document, discussed it with his attorney, understood it, and freely signed it.
 {¶ 16} The trial court stated, "I do find that Mr. Canady was informed of all his constitutional rights, and I find he has made a knowing, intelligent, and voluntary waiver of these rights. I also find that Mr. Canady understands the nature of the charges against him, the effect of his guilty plea, as well as the maximum penalty that can be imposed." The trial court went on to state, "Sir, I do find your pleas to be knowing and voluntary and intelligently made, and I will accept them." We agree with the trial court, and we overrule Canady's first assignment of error.
 Second Assignment of Error {¶ 17} According to appellate counsel, the second assignment of error is based on issues Canady has raised himself, and it consists of two parts. In the first, Canady claims that he "was coerced and deceived by trial counsel into signing the guilty plea document, thus making his plea involuntary." This claim is rejected.
 {¶ 18} The trial court personally addressed Canady throughout the plea proceedings, asked questions of him, and received intelligent responses. Canady gave no indication that he had been "coerced and deceived" by his attorney at any time. In fact, the record shows the opposite. Early in the plea proceedings, the court asked Canady if his attorney had "explained everything" and answered all his questions. Canady replied, "Yes, ma'am." Canady was then asked by the court, "And are you satisfied with your attorney?" Canady replied, "Yes, ma'am." In addition, and as we have already pointed out, Canady told the court that he had read and discussed his written guilty plea with his attorney, understood the document, and freely signed it.
 {¶ 19} In the second part of this assignment of error, Canady claims that "[t]he sentence imposed by the trial court was in violation ofState v. Foster, Blakely v. Washington, U.S. [v.] Booker." This issue has been adequately addressed under the first assignment of error. An agreed sentence, authorized by law, is not subject to appellate review.[15]
 {¶ 20} Consequently, we overrule Canady's second assignment and affirm the trial court's judgment.
Judgment affirmed.
PAINTER, P.J., and HILDEBRANDT, J., concur.
[1] R.C. 2903.08(B)(1)(a).
[2] R.C. 2903.08(C)(2).
[3] R.C. 4549.02(B).
[4] R.C. 2921.34(C)(2)(a).
[5] R.C. 2929.14(A).
[6] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[7] State v. Simmons, 1st Dist. No. C050817, 2006-Ohio-5760.
[8] Id. at ¶ 4.
[9] 8th Dist. No. 87886, 2007-Ohio-8, ¶ 6.
[10] R.C. 2929.14(A)(2).
[11] R.C. 2929.14(A)(5).
[12] Simmons, supra, at ¶ 10.
[13] State v. Engle, 74 Ohio St.3d 525, 527,1996-Ohio-179,660 N.E.2d 450.
[14] State v. Nero (1990), 56 Ohio St.3d 106,107, 564 N.E.2d 474.
[15] Simmons, supra, at ¶ 4.