DECISION.
{¶ 1} Defendant-Appellant Ramone Royles appeals his agreed sentences in case numbers B-0511564 and B-0603247 following guilty pleas for trafficking in cocaine.[1]
 {¶ 2} In October 2005, Royles sold over ten grams of crack cocaine to another person for $500 (case number B-0511564). In April 2006, Royles sold 5.91 grams of crack cocaine to another person in exchange for money (case number B-0603247). On the day of his trial, Royles pleaded guilty to two counts of trafficking in cocaine, each a second-degree felony, under a plea agreement that included an agreed sentence. The court accepted the agreement and Royles's guilty pleas, and imposed a concurrent seven-year sentence for each offense.
 {¶ 3} In his first assignment of error, Royles argues that he was improperly prejudiced by a sentence greater than the minimum for a second-degree felony. Royles claims that the Ex Post Facto and Due Process Clauses forbid a retroactive application of the holding inState v. Foster[2] because he committed his offenses before the release of Foster. Royles also argues that his pleas were involuntary because he was not aware that he was pleading guilty under a more onerous sentencing statute.
 {¶ 4} In his second assignment of error, Royles requests a review of several issues that he believes gave rise to due-process violations. As conceded by Royles in his brief, the issues raised are without merit. *Page 3 
 {¶ 5} The Supreme Court of Ohio decided Foster[3] after Royles's October 2005 offense but before his conviction and sentencing.Foster brought Ohio's sentencing scheme in line with the United States Supreme Court's holding in Blakely v. Washington.[4] It declared portions of R.C. 2929.14 unconstitutional, including R.C. 2929.14(B), which required a minimum prison term for an offense absent certain judicial findings.[5] The court "severed and excised"[6] these provisions. Thus, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required "to make findings or give their reasons for imposing * * * more than the minimum sentences."[7]
 I. Ex Post Facto and Due Process {¶ 6} We have previously held that the Ohio Supreme Court's decision in Foster does not violate ex post facto and due-process principles.[8] The Ex Post Facto Clause is a limitation on legislative powers.[9] It does not apply to the "judicial branch of government,[10] courts,[11] or judicial decisionmaking."[12]
Retroactive judicial decisionmaking is limited by the due-process concept of fair warning, not by the Ex Post Facto Clause.[13] With respect to judicial decisions, fair warning does not exist when the judicial interpretation is "unexpected and indefensible by reference to the *Page 4 
law which had been expressed prior to the conduct in issue."[14]Foster was not unexpected and indefensible by reference to the law that had been expressed prior to Royles's offenses.[15]
 {¶ 7} Likewise, applying Foster to Royles's case did not violate the Due Process Clause. It changed neither the elements of the crimes nor the potential punishment.[16] As a result, Royles was aware of the possible punishment he faced when he committed the offenses. This case presents no compelling reason to depart from our holding in State v.Bruce, and consequently Royles's first assignment of error is meritless.
 II. Appellate Review of Agreed Sentences {¶ 8} Appellate courts have limited ability to review agreed sentences. As we stated in State v. Simmons,[17] "[u]nder R.C.2953.08(D), an agreed sentence is not subject to appellate review if it is authorized by law. A sentence is authorized by law if it is within the statutory range of possible sentences and does not exceed the maximum term authorized for the offense. This statute prevents an appellate court from reviewing any agreed sentence as long as it is within the statutory range, even if [it] implicatesFoster."[18]
 {¶ 9} Royles's sentence was authorized by law. The terms of incarceration he received were within the statutory ranges allowed; neither exceeded the maximum *Page 5 
term allowed. Royles pleaded guilty to one count of trafficking, a second-degree felony, with a statutory range of two to eight years.[19] As part of his plea agreement, he also pleaded guilty to another count of trafficking, also a second-degree felony, with a statutory range of two to eight years.[20] While he could have received 16 years' mandatory incarceration, Royles received concurrent seven-year terms totaling seven years' incarceration.
 {¶ 10} While we cannot review an agreed sentence, we may review the validity of the plea leading to the agreed sentence. A guilty plea must be made "knowingly, intelligently, and voluntarily."[21] Crim.R. 11(C) "was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record of review."[22]
 {¶ 11} Foster's effect on Ohio's sentencing scheme did not have any bearing on the voluntary nature of Royles's pleas. Foster did not change Crim.R. 11 or the basic elements of any offense.[23] Nor did it change the basic prison terms provided in R.C. 2929.14 or any other penalty.[24]
 {¶ 12} The record shows that the trial court personally addressed Royles and strictly complied with Crim.R. 11(C) prior to accepting his guilty pleas. The trial court explained the meaning and consequences of a guilty plea and informed Royles that, after accepting the pleas, it could proceed to judgment and sentence. *Page 6 
 {¶ 13} The trial court explained to Royles his potential sentence. It informed Royles that the maximum penalty for each of the charges to which he was pleading guilty was eight years. The trial court told him that he faced up to 16 years in prison and that his mandatory prison sentence allowed neither judicial release nor good-time reduction. Royles answered in the affirmative when the trial court asked if he understood the charges against him and the possible penalties.
 {¶ 14} Furthermore, the trial court inquired whether Royles had read and understood the written guilty pleas. Royles indicated that he had read and understood them. And the trial court questioned whether he had had an opportunity to discuss the pleas with his counsel. Royles again answered in the affirmative. The trial court also discussed with Royles the nature of his constitutional rights and his decision to waive them by pleading guilty.
 {¶ 15} Finally, the trial court concluded, "I do find that Mr. Royles was informed of his constitutional rights, and I do find that he's made a knowing, intelligent and voluntary waiver of those rights. I also find that Mr. Royles understands the nature of the charges against him, the effect of his guilty pleas, as well as the maximum penalties that can be imposed." We agree with the trial court that Royles's pleas were voluntary. Royles's second assignment of error is without merit.
 {¶ 16} Because neither of Royles's assignments of error has merit, we affirm the judgment of the trial court.
Judgment affirmed.
HILDEBRANDT and HENDON, JJ., concur.
Please Note:
The court has recorded its own entry on the date of the release of this decision.
[1] R.C. 2925.03(A)(1).
[2] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
[3] Id.
[4] (2004), 542 U.S. 296, 124 S.Ct. 2531.
[5] Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus.
[6] Id. at ¶ 97.
[7] Id. at paragraph seven of the syllabus.
[8] See State v. Bruce, 170 Ohio App.3d 92, 2007-Ohio-175,866 N.E.2d 44.
[9] Rogers v. Tennessee (2001), 532 U.S. 451, 456,121 S.Ct. 1693.
[10] Id.
[11] Id. at 460, 121 S.Ct. 1693.
[12] Id.
[13] Id.
[14] Id. at 461-462, quoting Bouie v. Columbia (1964), 378 U.S. 347,354, 84 S.Ct. 1697.
[15] See Bruce, supra.
[16] Id. at ¶ 11.
[17] State v. Simmons, 1st Dist. No. C-050817,2006-Ohio-5760.
[18] Id. at ¶ 4 (citations omitted).
[19] R.C. 2925.03(A)(1).
[20] R.C. 2925.03(C)(4)(e).
[21] State v. Engle, 74 Ohio St.3d 525, 527, 1996-Ohio-179,660 N.E.2d 450.
[22] State v. Nero (1990), 56 Ohio St.3d 106, 107,564 N.E.2d 474.
[23] State v. Canady, 1st Dist. No. C-060267,2007-Ohio-313.
[24] Id. *Page 1