DECISION
{¶ 1} Defendant-appellant Tony Pippin entered a guilty plea to burglary with an agreed sentence of four years in prison. The trial court accepted the plea and imposed the agreed four-year term. Pippin now appeals, arguing that the trial court denied him the effective assistance of counsel and due process. We reject Pippin's claims and affirm the trial court's judgment.
 {¶ 2} Pippin was indicted in March of 2006 on one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony. The trial court appointed counsel to represent Pippin, and Pippin entered a plea of not guilty. Counsel requested discovery and a bill of particulars, and moved for a reduction in bond.
 {¶ 3} Thereafter, Pippin and the state entered into plea negotiations that resulted in the state's offer of a guilty plea with an agreed sentence of four years in prison. At a hearing on May 31, 2006, Pippin complained that the four-year term offered by the state was too long. Defense counsel informed the court that she had asked the prosecutor to amend the charge to a lesser offense to no avail. The prosecutor noted that Pippin's repeated confession to the crime and his "extensive" criminal record weighed against a reduction.
 {¶ 4} Also at the May 31, 2006, hearing, Pippin made a request for the appointment of new counsel. The trial court inquired into the basis for Pippin's request, and then the court denied the request after finding no just cause. The court then provided Pippin with the opportunity to retain private counsel by granting continuances, but Pippin did not retain private counsel.
 {¶ 5} After granting Pippin's seventh request for a continuance, the court scheduled a jury trial for October 11, 2006. On that date, Pippin again requested new counsel, and defense counsel asked to withdraw. The court eventually complied with *Page 3 
these requests after Pippin stated that he would "take the four years" because defense counsel refused to look at some papers that he possessed. Defense counsel declined to assist Pippin in preparing the agreed plea but indicated that taking the four-year deal was a "very smart decision." The court told Pippin that "we will appoint new counsel only for the purpose of going over your plea. If you are not satisfied with the proposed agreed plea, you have an absolute right to reject it today."
 {¶ 6} Prior to appointing new counsel, the court told Pippin that it would not accept the negotiated plea after that date. The prosecutor added that the state would not offer the negotiated plea on a later date, noting that the state's witnesses were present and the state was ready to proceed with the trial as scheduled.
 {¶ 7} Importantly, at the time the court informed Pippin that it would appoint new counsel to review the plea, the court never stated or implied that Pippin would have to proceed to trial that day with new counsel.
 {¶ 8} The court heard other matters while new counsel met with Pippin, discussed the plea agreement, and reviewed the pertinent plea documents. New counsel attempted to negotiate a lesser sentence, but the prosecutor rejected the offer.
 {¶ 9} When Pippin's case was recalled, the trial court personally addressed Pippin and explained to Pippin the terms of the plea agreement; the nature of the charge and the potential penalties, including a maximum eight-year term in prison; the effect of the plea; and the rights that Pippin was waiving by entering into an agreed plea. The court asked Pippin if he had been satisfied with the representation of new counsel, to which he replied affirmatively. The court then accepted Pippin's guilty plea and sentenced him to four years in prison. *Page 4 
 Sixth Amendment Claim {¶ 10} Pippin first challenges his conviction on the ground that the trial court denied him the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.
 {¶ 11} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." An indigent defendant charged with a serious offense establishes a Sixth Amendment violation if the trial court has completely denied him counsel's assistance at a critical stage of the proceedings, unless the defendant has waived the right to counsel.[1] A constitutional error of that magnitude requires no showing of prejudice for a reversal of the conviction.[2]
 {¶ 12} Similarly, in very limited circumstances where the trial court's actions or counsel's actions are such that the defendant is necessarily precluded from receiving the effective assistance of counsel, prejudice will also be presumed. These circumstances include where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing" and where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."[3] In such cases, the defendant is constructively denied his right to counsel.
 {¶ 13} Absent these or similar circumstances that establish a per seSixth Amendment violation, to establish an ineffective-assistance claim, a defendant must generally demonstrate that counsel's performance fell below an objective standard of *Page 5 
reasonableness and that this deficient performance prejudiced him.[4]
The United States Supreme Court announced this standard inStrickland v. Washington.[5]
 {¶ 14} The specific Strickland inquiry in the context of a plea hearing focuses on the voluntariness of the defendant's plea. Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the validity of the plea depends upon two issues: (1) whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases,"[6] and (2) whether "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."[7] If the defendant cannot demonstrate that he would not have entered the guilty plea but for counsel's deficient performance, then he has not suffered a constitutional deprivation, and, accordingly, he is not entitled to relief.
 {¶ 15} Pippin claims that the trial court's failure to appoint new counsel until he had agreed to accept the plea, as well as the court's restriction of the scope of new counsel's role in reviewing the plea, amounted to a per se Sixth Amendment violation requiring no demonstration of prejudice.
 {¶ 16} While we agree with Pippin that he had the right to the effective assistance of counsel at his plea hearing,[8] we disagree with his conclusion that the circumstances of this case gave rise to a per se Sixth Amendment violation.
 {¶ 17} First, Pippin has not established that he was literally denied his right to counsel when he entered his plea, where the trial court actually appointed new counsel to review the plea agreement with him. Although the right to counsel "cannot be satisfied by mere formal appointment"[9] of counsel, the court here provided new counsel with time to *Page 6 
review the record and to discuss the plea with Pippin. The record contained a bill of particulars detailing the charge against Pippin and the state's response to former defense counsel's discovery request. In this response, the prosecutor indicated an intent to offer at trial Pippin's taped statement and signed waiver, some photographs, and Pippin's fingerprint card. Additionally, the state revealed its intent to call several police officers to testify and to introduce fingerprint analysis as part of its case. Further, Pippin had previously served a ten-year prison term for auto theft in Texas and was facing a maximum eight-year prison term for the burglary. We cannot presume from these circumstances that any lawyer, no matter how competent, could not have performed effectively.
 {¶ 18} Further, we are not persuaded that the trial court's comment that new counsel had been appointed "only for the purpose of going over the plea" was a restriction on the scope of counsel's representation that amounted to the constructive denial of counsel's assistance. We interpret the court's comment to mean that new counsel was to evaluate the plea bargain that day, rather than proceeding directly to the scheduled trial. We arrive at this conclusion because, prior to accepting Pippin's plea, the trial court repeatedly informed Pippin that if he rejected the plea he had a right to a trial, and because the court specifically informed Pippin that new counsel could subpoena and cross-examine witnesses.
 {¶ 19} On this record, to establish a meritorious Sixth Amendment ineffective-assistance claim, Pippin must demonstrate deficient performance by counsel and a reasonable probability that, but for counsel's errors, he otherwise would not have entered a guilty plea and would have instead insisted on going to trial.[10] *Page 7 
 {¶ 20} Pippin has not directed our attention to any deficiency in new counsel's performance, and we cannot find any on this record. Pippin has also failed to allege the necessary prejudice related to counsel's performance.
 {¶ 21} Ultimately the court provided Pippin with what he has claimed to have been deprived of and what he was constitutionally entitled to: the effective assistance of counsel. Accordingly, we reject hisSixth Amendment claim.
 Due Process Claim {¶ 22} Relatedly, Pippin argues that the trial court denied him due process of law by accepting his guilty plea. The basic principles of due process require that a defendant's guilty plea be knowing, intelligent, and voluntary.[11] A failure on any of these elements "renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution."[12] In reviewing the merits of Pippin's due-process claim, we examine the record of the proceedings before the trial court,[13] taking into account the totality of the circumstances.[14]
 {¶ 23} To ensure that a plea is made knowingly, voluntarily, and intelligently, a trial court must engage in oral dialogue with the defendant in accordance with Crim.R. 11(C)(2). Crim.R. 11(C)(2) requires that a trial court determine the following from the colloquy with the defendant: (1) whether the defendant's plea is voluntary; (2) whether the defendant understands the effects of the guilty plea at the time he enters it; and (3) whether the defendant, at the time he enters the guilty plea, understands that by entering the plea he is waiving certain constitutional rights. *Page 8 
 {¶ 24} Further, "[a] trial judge's participation in the plea bargaining process will be carefully scrutinized to determine if it affected the voluntariness of the plea."[15] Judicial participation is strongly discouraged but does not render a plea per se involuntary; the ultimate inquiry is whether the "judge's active conduct could lead a defendant to believe he cannot get a fair trial * * *."[16]
 {¶ 25} Pippin claims that the trial court made comments that signaled to him that a trial was unnecessary and that the court would impose a sentence greater than the proposed four-year sentence if Pippin proceeded to trial. According to Pippin, these comments, viewed cumulatively, presented Pippin with no choice but to plead guilty.
 {¶ 26} Our careful scrutiny of the record leads us to conclude that some of the court's comments tested the bounds of impartiality, including the comment to Pippin that "if I appoint new counsel, I'm not entering into any agreed plea," and that Pippin could "roll the dice, so to speak, and have a trial." But these comments were made before the court appointed new counsel and revisited the plea agreement. After considering the timing of the comments and the remainder of the transcript, which includes a comprehensive Crim.R. 11 colloquy, we cannot say that the court's comments could have led Pippin to believe that he could not get a fair trial.
 {¶ 27} Pippin claims also that the court conditioned the appointment of new counsel on his agreement to plead guilty, rendering his plea involuntary. The record belies this claim: the court repeatedly informed Pippin of his absolute right to reject the plea and to proceed to trial. The only condition placed upon Pippin was that he had to decide that day whether to accept the plea. The court's imposition of this condition did not render the *Page 9 
plea involuntary due to inappropriate judicial involvement,[17]
especially where the prosecutor had imposed the same deadline.
 {¶ 28} Finally, Pippin argues that he could not have knowingly entered the guilty plea because the trial rights the court informed him of were illusory when the court had appointed new counsel only to evaluate the plea. We have already rejected Pippin's contention that the trial court was only appointing counsel to review the plea. Our conclusion is bolstered by the trial court's thorough explanation of Pippin's trial rights and the court's explanation of new counsel's role in enforcing those rights. Thus, Pippin's trial rights were not illusory. And where the record demonstrates that Pippin was informed of these rights, Pippin cannot demonstrate that he unknowingly waived them when he entered his guilty plea.
 {¶ 29} We determine from the record that Pippin's guilty plea was knowing, intelligent, and voluntary, and that Pippin was not denied hisSixth Amendment right to counsel. Accordingly, we overrule the assignments of error and affirm the trial court's judgment.
Judgment affirmed.
SUNDERMANN, P. J., and HENDON, J., concur
[1] Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792.
[2] United States v. Cronic (1984), 466 U.S. 648, 659,104 S.Ct. 2039.
[3] Id. at 659-60.
[4] See Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
[5] Strickland, supra.
[6] Hill v. Lockart (1985), 474 U.S. 52, 56, 106 S.Ct. 366 (internal citation omitted).
[7] Id. at 59.
[8] See Hill, supra.
[9] Avery v. Alabama (1940), 308 U.S. 444, 446, 60 S.Ct. 321.
[10] Hill, 474 U.S. 52.
[11] State v. Engle, 74 Ohio St.3d 525, 527, 1996-Ohio-179,660 N.E.2d 450.
[12] Id.
[13] State v. Spates, 64 Ohio St.3d 269, 272, 1992-Ohio-130,595 N.E.2d 351.
[14] State v. Nero (1990), 56 Ohio St.3d 106, 108,564 N.E.2d 474.
[15] State v. Byrd (1980), 63 Ohio St.2d 288, 407 N.E.2d 1384, syllabus.
[16] Id. at 293.
[17] See State v. Simmons, 1st Dist. No. C-050817,2006-Ohio-5760. *Page 1