**The STATE of Ohio, Appellee,**

v.

**SAWYER, Appellant.**

[Cite as *State v. Sawyer,* 183 Ohio App.3d 65, 2009-Ohio-3097.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080433.

Decided June 26, 2009.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Tanner McFall, Assistant Prosecuting Attorney, for appellee.

Michaela M. Stagnaro, for appellant.

CUNNINGHAM, Judge.

{¶ 1} Defendant-appellant, Tiffany Sawyer, was convicted on two counts of aggravated assault[1] upon guilty pleas. The trial court, without ordering a presentence-investigation report, imposed the maximum, consecutive terms of incarceration that Sawyer had agreed to as part of a plea bargain. On appeal, Sawyer now challenges (1) the voluntariness of her pleas due to judicial participation in the plea process and (2) the legality of her sentence. We affirm, but not without reproach.

## Background Information

{¶ 2} Sawyer was indicted on two counts of felonious assault, second-degree felonies, arising out of an attack on Camella Harris with a box cutter. Harris received multiple injuries.

{¶ 3} The pretrial proceedings were extensive. There was a bill of particulars and discovery. At the request of defense counsel, the trial court ordered a competency evaluation of Sawyer. She was found competent to stand trial and later notified the state of her alibi defense. Also, while the case was awaiting trial, the court held a hearing on Sawyer's request for a bond reduction. The court rejected Sawyer's request after reviewing the allegations and Sawyer's prior record, including her juvenile adjudications and her recent misdemeanor convictions for which she had been serving a jail term.

{¶ 4} The court was unable to proceed on the first trial date. On the second trial date, November 28, 2007, Sawyer's alibi witness, whom she could not locate, did not appear, and the case was continued until February 12, 2008. The transcript from the November hearing demonstrates that the state had offered to dismiss one count of felonious assault in exchange for Sawyer's guilty plea to the other ("one-for-one"), with no agreed sentence and the state's not taking a position on sentencing except to relay that the victim was requesting prison time.

{¶ 5} The case was set for a jury trial on April 9, 2008. On that date, Sawyer waived her right to a jury. A short break ensued as the trial court dismissed the jury. During the break, the state and Sawyer resumed plea discussions. When the break ended, the prosecutor informed the trial court that they "may" have reached a plea agreement during the recess. Defense counsel added to the record that Sawyer had asked him to continue to work out a deal after rejecting the one-for-one offer.

{¶ 6} The new deal, which defense counsel called a "last minute option," unequivocally involved a tendered plea to "two Felony 4's"—aggravated assault.

---

1. R.C. 2903.12(A)(1) and 2903.12(A)(2).

He added, though, that "[his] basic understanding is that what [they] have at this point is that there is no representations as to sentencing from either side, or from the Court on the plea that is tendered. There would be a sentencing—." Counsel was interrupted by the trial court, and the following dialogue occurred:

{¶ 7} "The Court: No, I did say—I did say I think.

{¶ 8} "Defense counsel: —on this. I don't know if—she's not been to the penitentiary before, I don't know if you're requesting a presentence investigation.

{¶ 9} "The Court: Well, the deal is—originally the deal is—we talked about this. I know the family wanted more time. I think, of course, the police said they wanted four, the family wants four, and we talked about it. And we talked about, I threw out the figure of three. We talked about three. And she thought that three was okay. I think we asked you, Detective, right?

{¶ 10} "The Detective: Yes, sir.

{¶ 11} "Defense Counsel: That's correct.

{¶ 12} "The Court: I don't think you had too much of a problem with three because she was like a first offender, and usually first offenders I give the minimum, which is two, since she cut her a couple of times, there was a scar, I thought she should get another—more. I was going to add another year. I thought that three was in line with other sentencings that I have given. That's kind of a deal, three. That's what we talked about, yeah.

{¶ 13} "Defense Counsel: Are you doing that without a presentence investigation?

{¶ 14} "The Court: Yeah. The deal is—let's just do it, three years. It's three years. That's it, three years.

{¶ 15} "Defense Counsel: I did represent—

{¶ 16} "The Court: I don't want to make any—I like everything on the record clear, so everybody understands what we're doing, you know. Three years. I thought it was a serious thing she did. She was a first offender, though. I think it's in line with other sentencings, you know.

{¶ 17} "Defense Counsel: I just wanted the Court to be aware that I did represent to her that the plea on the one for one, that there was a real possibility of three. I did not represent to you—

{¶ 18} "The Court: I'm representing—

{¶ 19} "Defense Counsel: —this was the maximum exposure. On this plea tendered in front of the Court now it is three years.

{¶ 20} "The Court: Yeah. It's a Felony 4. It carries 6 to 18 months on each one; * * * It's been reduced from a Felony 2, which is—a Felony 2 carries 2 to 8

years on each count. Technically, she faced 16 years. I felt three was the right figure. I thought she was going to plead to one of these felonious assaults. I was surprised when I saw assault.

{¶ 21} "If everybody is okay with agg assault, I'll take it. What do you think, the police? I thought it was going to be felonious assault.

{¶ 22} "The Detective: We had mixed feelings on it, Your Honor, but decided to go with the agg assault.

{¶ 23} "The Court: As long as she gets three years—I'm okay with it as long as she gets three years.

{¶ 24} "The Prosecutor: Basically, that's what we decided.

{¶ 25} "The Court: I said if she pleads to felonious—I know you said four, we talked a little more. I thought, what about, let me see, first offender, normally I give first offenders the minimum, which is two. Since she did cut this young girl more than one time, a couple of times; twice I think on the arm and once on the head three times.

{¶ 26} "The Prosecutor: Four.

{¶ 27} "The Court: Four times. Okay. I thought, you know, she deserved then more than the minimum. I thought three. We tossed around three. Everybody seemed okay. You seemed okay with three. I thought it was a plea to felonious, now I see agg assault.

{¶ 28} "I'm okay with agg assault as long as—the bottom line is three years. She does three years. She gets 292 days time served. So she still has a little more, another—365 days in a year. So, she's got a couple more months to serve on the first year. And then she will get two more years after that, you know, she still has two more years to serve. So, is that—you okay with that as long as it's three years?

{¶ 29} "The Detective: Yes, sir.

{¶ 30} "The Court: So, that's okay. Do you understand that it is going to be three years?

{¶ 31} "Defense Counsel: I did not know it was coming to that. I thought we were having a presentence investigation.

{¶ 32} "The Court: No point in wasting money.

{¶ 33} "Defense Counsel: I understand at this point—

{¶ 34} "The Court: It's going to be three years. Her mom and she knows it's going to be three years?

{¶ 35} "The Mother: No, I did not know that.

{¶ 36} "Defense Counsel: She was only aware of one for one. That's all I discussed.

{¶ 37} "The Court: It clearly has to be three. I am not going lower than three years, okay. Okay. Well, now you know, so it's up to you.

{¶ 38} "Defense Counsel: He's asking, do you want to proceed?

{¶ 39} "The Court: Your mom is not doing the time, it's up to you.

{¶ 40} "Defense Counsel: She says yes.

{¶ 41} "The Court: That's why I do everything on the record. Do you understand that now, mom, she still wants to do it?

{¶ 42} "The Mother: She wants to do what?

{¶ 43} "The Court: She wants to do the three.

{¶ 44} "The Mother: Where will she do it at?

{¶ 45} "The Court: In prison.

{¶ 46} "* * *

{¶ 47} "The Court: Now we're talking to you (the defendant). You're 21. You're the one doing the time. Okay. That's what you want to do? You understand that it is going to be three years?

{¶ 48} "The Defendant: Yes, sir."

{¶ 49} The court then completed the Crim.R. 11 colloquy and accepted Sawyer's guilty pleas to both offenses. The court provided Sawyer with her right of allocution before imposing sentence. At that time, defense counsel called the sentence "fair," and Sawyer agreed. Defense counsel added, "We have no comment as to sentencing. It's a negotiated plea from two Felony 2s to two Felony 4s. There's not much else we can say, Your Honor. I think that we pretried this case extensively." The court then imposed consecutive 18–month terms for a cumulative term of three years in prison.

### Voluntariness of the Plea

{¶ 50} In her first assignment of error, Sawyer claims that the trial court improperly participated in the plea-bargaining process, which ultimately caused her plea to be involuntary.

{¶ 51} The basic principles of due process require that a defendant's guilty plea be knowing, intelligent, and voluntary.[2] The absence of any of these elements "renders enforcement of the plea unconstitutional under both the

---

2. *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.

United States Constitution and the Ohio Constitution."[3]   In reviewing the merits of Sawyer's due-process claim, we examine the record of the proceedings before the trial court,[4] taking into account the totality of the circumstances.[5]

■   {¶ 52} The trial court's participation in the plea-bargaining process presents a "high potential" for coercion, as the court's power is intimidating.[6] Moreover, the participation may appear to interfere with, or actually interfere with, the court's role as an impartial arbiter.[7]   Ohio courts are counseled to avoid participation in plea discussions for compelling reasons: · "[J]udicial participation in the discussion can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge;  (2) judicial participation in the discussion makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered;  (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report;  and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent."[8]

■■   {¶ 53} In contrast to the approach taken in federal courts,[9] Ohio has rejected a rule that such participation per se renders a plea involuntary and thus invalid.[10]   Rather, "[a] trial judge's participation in the plea bargaining process will be carefully scrutinized to determine if it affected the voluntariness of the defendant's plea."[11]   "Ordinarily, if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial, the plea

---

3.  Id.

4.  See State v. Kelley (1991), 57 Ohio St.3d 127, 129, 566 N.E.2d 658.

5.  State v. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.

6.  State v. Byrd (1980), 63 Ohio St.2d 288, 292, 17 O.O.3d 184, 407 N.E.2d 1384.

7.  Id.

8.  Id. at 293, 17 O.O.3d 184, 407 N.E.2d 1384, quoting Section 3.3(a) of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft 1968).

9.  Fed.R.Crim.P. 11(e)(1) ("The court shall not participate in any [plea] discussions").

10.  Byrd, 63 Ohio St.2d at 293, 17 O.O.3d 184, 407 N.E.2d 1384.

11.  Id. at syllabus; State v. Pippin, 1st Dist. No. C–060929, 2007-Ohio-5974, 2007 WL 3306745, ¶ 24.

should be held involuntary and void" under the federal and state constitutions.[12]

{¶ 54} Sawyer specifically alleges, "[A]fter being told by the trial court that unless [I] served three years it would not accept the plea, [I] felt that [I] had no other choice" but "to enter the plea to avoid a harsher result by going to trial." In reviewing this contention, we are mindful that if Sawyer had gone to trial, she would have been exposed to a much higher penalty range, as she would have been tried for the original—and more serious—offenses, not the reduced ones. Recognizing the limitation to her argument under these circumstances, we hold that our ultimate inquiry in reviewing Sawyer's claim is whether the court's active participation could have led Sawyer to believe that she could not get a fair trial, including a fair sentence after trial, and thus whether the judicial participation undermined the voluntariness of her plea.[13]

{¶ 55} After our review of the record, we are not persuaded by Sawyer's argument that the trial court's actions undermined her free will to the extent that her plea was not voluntary in a constitutional sense.

{¶ 56} In this case, the trial court did not initiate the plea discussion that resulted in Sawyer's plea of guilty. Rather, the plea-bargaining process had begun with the parties themselves, in the absence of the trial court, as the court was dismissing the jury. Clearly Sawyer had taken steps to acknowledge her guilt without reservation before the trial court became involved.

{¶ 57} Moreover, the trial court's participation, at least at the outset, was due to the lack of a clearly defined agreement, as indicated by counsel's choice of these words: "we **may** have a deal," and "**my understanding** of the deal is." (Boldface added.) The court was enforcing Crim.R. 11(F), which requires that in a felony case involving a negotiated plea to a lesser offense, the terms of the underlying agreement upon which the plea is based be stated on the record in open court. The court was also seeking information to determine whether to exercise its discretion to reject the plea.[14] And the court had had previous conversations with the parties that had led it to believe that a term of three years had been previously agreed to.

{¶ 58} No doubt the court's participation moved from a clarification of the plea arrangements to a more active role. But the court's participation cannot readily be characterized as plea-inducing: the court promised to impose maximum,

---

12. *Byrd,* 63 Ohio St.2d at 293, 17 O.O.3d 184, 407 N.E.2d 1384.

13. Id.

14. See Crim.R. 11(G).

consecutive terms if Sawyer entered the plea, and it did not make any threat bearing on her exercise of her trial rights if she rejected the plea.

{¶ 59} The court's participation in this case was not similar to the coercive judicial participation invalidated by this court in the recent decision of *Cincinnati v. Smith.*[15] In *Smith,* the trial court coerced the defendant into accepting a plea on solicitation charges by threatening to impose a harsher sentence for the probation violation after he pleaded no contest to the violation. "The trial court gave Smith an ultimatum: (1) try the soliciting charge to a jury and go to jail for 180 days for the probation violation or (2) plead no contest to soliciting and remain on probation. * * * When faced with 180 days in jail, Smith folded and pleaded no contest to solicitation."[16] The court's threat to punish the defendant for exercising her trial rights was inherently coercive and rendered her plea involuntary.

{¶ 60} This case is also distinguishable from our decision in *State v. Harper.*[17] In *Harper,* we held that the trial court had abused its discretion by basing its decision whether to accept a no-contest plea on an inappropriate consideration— the denial of the plea would prevent the defendant from exercising the right to appeal—and the court compounded the error by repeatedly advising the defendant that any plea agreement had to be based on a guilty plea, adversely affecting the voluntariness of the defendant's eventual decision to plead guilty.[18] At one point, the court told the defendant, "On a plea of no contest, you know, all deals are off as far as the minimum sentence is concerned, since he's going to appeal."[19]

{¶ 61} In this case, the trial court's unstated motivation for its involvement was to make sure that Sawyer could receive the term of incarceration warranted by the attack—at least three years—a term that might not have been lawful with reduced charges absent the sentencing agreement, because of an allied-offenses issue. Notably, the defendant has no constitutional right to plead guilty to an offense,[20] and the trial court has discretion to accept or reject a

---

15. *Cincinnati v. Smith,* 180 Ohio App.3d 587, 2009-Ohio-143, 906 N.E.2d 497.

16. *Smith* at ¶ 33.

17. (1988), 47 Ohio App.3d 109, 547 N.E.2d 395.

18. Id. at 112, 547 N.E.2d 395.

19. Id. at 111, 547 N.E.2d 395.

20. *State v. Jackson* (1980), 68 Ohio App.2d 35, 36, 22 O.O.3d 19, 426 N.E.2d 528, citing *North Carolina v. Alford* (1970), 400 U.S. 25, 28, 91 S.Ct. 160, 27 L.Ed.2d 162, at fn. 11.

change in plea.[21]

{¶ 62} Finally, the trial court's participation was not similar to the pervasive participation criticized by the Ohio Supreme Court in *State v. Byrd*.[22] In *Byrd*, a capital case, the trial court engaged extensively in plea negotiations involving the defendant, and as a result, "[i]t appeared as if the judge had joined * * * with the prosecution in deciding that the appellant was guilty."[23] In addition to initiating and negotiating the bargain with the prosecutor, the court contacted the defendant's relatives and encouraged them to pressure him to plead guilty,[24] and it spoke to the defendant, without his attorney present, in chambers, where it told Byrd that the deal was "pretty good." The court also told Byrd that, if he chose not to plead guilty, he would be in for a long trial that would not be " 'a picnic, but neither is killing somebody a picnic.' "[25]

{¶ 63} In addition, the record supported Byrd's claim that the trial court's involvement had coerced him to accept the plea. Defense counsel represented in the postconviction proceeding that Byrd's desire to have a trial had been unwavering, from the time that Byrd had been charged until the time that counsel was notified by the court of the plea.

{¶ 64} The Ohio Supreme Court held that Byrd's plea had been given involuntarily because of the intense pressure on Byrd to plead guilty, initiated by the trial court, coupled with Byrd's drug addiction and his inability to consult counsel.[26] The case before us does not involve the circumstances that persuaded the court in *Byrd* that the plea was tainted.

{¶ 65} We do not condone the later aspect of the trial court's participation, but the record in this case does not compel a conclusion that Sawyer's plea had been given involuntarily because of the court's active conduct. Rather, the record indicates that Sawyer entered the plea to reduce her sentencing exposure from two to 16 years of incarceration to three. Importantly, she had pressed for a plea bargain before the court's challenged participation. It is also noteworthy that Sawyer did not mention her alibi witness at the change-of-plea hearing. The

---

21. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222–223, 15 OBR 311, 473 N.E.2d 264; Crim.R. 11(C)(2); R.C. 2943.03.

22. 63 Ohio St.2d 288, 17 O.O.3d 184, 407 N.E.2d 1384.

23. *Byrd*, 63 Ohio St.2d at 294, 17 O.O.3d 184, 407 N.E.2d 1384.

24. Id. at 289–290, 17 O.O.3d 184, 407 N.E.2d 1384.

25. Id. at 290, 17 O.O.3d 184, 407 N.E.2d 1384.

26. Id. at 294, 17 O.O.3d 184, 407 N.E.2d 1384.

subpoena issued to this witness requesting personal service had been returned as undeliverable.

{¶ 66} Sawyer contends also that although she was found competent to stand trial, she had "mental issues" that we should consider in evaluating the voluntariness of her plea. We have considered these, along with the totality of the circumstances, in arriving at our conclusion. Sawyer was represented by counsel, and the trial court personally and carefully advised her in accordance with Crim.R. 11(C) before finding her plea knowing, intelligent, and voluntary. Under these facts, we arrive at the same conclusion that the trial court reached.

## Sentencing Issues

{¶ 67} Sawyer challenges the sentence imposed by the trial court for two reasons: (1) the court imposed the sentence without ordering a presentence investigation, and (2) the court sentenced her on allied offenses of similar import. But R.C. 2953.08(D) prevents our review of these sentencing issues.

{¶ 68} R.C. 2953.08(D) provides exceptions to a defendant's right to appeal a felony sentence.[27] R.C. 2953.08(D)(1) precludes appellate review of an agreed sentence. An agreed sentence is one that has been jointly recommended by the defendant and the state, is imposed by the sentencing court, and is "authorized by law." This court has previously held that a sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1), and is therefore not appealable, so long as it is within the statutory range of possible sentences and does not exceed the maximum term authorized by statute for the offense.[28] The Ohio Supreme Court has recognized that "[t]he General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate." [29]

{¶ 69} R.C. 2953.08(D)(1) bars our review of Sawyer's sentencing issues. In reaching this conclusion, we first determine that Sawyer and the prosecutor "jointly recommended" the sentence as contemplated in R.C. 2953.08(D)(1), where the prosecutor thought that the deal involved a recommended three-year sentence, and where Sawyer provided express consent to this sentence and later entered her guilty plea, knowing that it involved her agreement to the sentence. Our determination is bolstered by Sawyer's conduct during sentencing—she did not offer any objection to the sentence and characterized it as fair.

---

27. R.C. 2953.08(A) and (D).

28. *State v. Royles,* 1st Dist. Nos. C–060875 and C–060876, 2007-Ohio-5348, 2007 WL 2892017, ¶ 8; *State v. Simmons,* 1st Dist. No. C–050817, 2006-Ohio-5760, 2006 WL 3111415, ¶ 4.

29. *State v. Porterfield,* 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, at ¶ 25.

{¶ 70} And in addition to the sentence's being jointly recommended, the sentencing court imposed the jointly recommended sentence. Finally, the sentence imposed did not exceed the maximum term statutorily allowed for the offenses and thus "was authorized by law." Consequently, R.C. 2953.08(D)(1) places the sentence beyond our review, and we are without jurisdiction to vacate it. In light of this conclusion, we overrule the second and third assignments of error.

{¶ 71} We note that our narrow definition of the phrase "authorized by law" in R.C. 2953.08(D)(1) comports with decisions from several appellate districts,[30] but that it conflicts with the Second Appellate District's decision in *State v. Underwood.*[31] *Underwood* recently held that a defendant's agreed sentence was not "authorized by law," even though it was within the statutory range, when the trial court failed to merge allied offenses of similar import. Thus, *Underwood* held that appellate review of the sentences was not precluded by R.C. 2953.08(D).[32] The Ohio Supreme Court will ultimately resolve this conflict.[33]

{¶ 72} We affirm the trial court's judgment.

Judgment affirmed.

HENDON, P.J., and SUNDERMANN, J., concur.

---

**30.** *State v. Turrentine,* 3rd Dist. No. 1–08–18, 2008-Ohio-3231, 2008 WL 2579702; *State v. Baird,* 7th Dist. No. 06–C–04, 2007-Ohio-3400, 2007 WL 1898045; *State v. Jackson,* 8th Dist. No. 86506, 2006-Ohio-3165, 2006 WL 1705133; *State v. Graham* (Sept. 30, 1998), 10th Dist. No. 97APA11–1524, 1998 WL 680968; *State v. Henderson* (Sept. 27, 1999), 12th Dist. No. CA99–01–002, 1999 WL 761002.

**31.** 2nd Dist. No. 22454, 2008-Ohio-4748, 2008 WL 4278145, discretionary appeal allowed, 120 Ohio St.3d 1486, 2009-Ohio-278, 900 N.E.2d 197, and certification granted, 120 Ohio St.3d 1484, 2009-Ohio-278, 900 N.E.2d 196.

**32.** *Underwood,* 2008-Ohio-4748, 2008 WL 4278145, ¶ 26.

**33.** The Ohio Supreme Court, recognizing a conflict among the districts, agreed to review the following question: "Is an agreed and jointly recommended sentence 'authorized by law' under R.C. 2953.08(D)(1), and thus not reviewable, when the agreed sentence includes convictions for offenses that are allied offenses of similar import?" *State v. Underwood,* 120 Ohio St.3d 1484, 2009-Ohio-278, 900 N.E.2d 196.